[Civ. No. 5934. Second Appellate District, Division One.—June 1, 1928.]

SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and DANIE McKENDRICK, a Minor, etc., Respondents.

Roy V. Reppy, E. W. Cunningham and Maurice Jones, Jr., for Petitioner.

G. C. Faulkner for Respondent Industrial Accident Commission.

Myrick & Deering and Scott for Respondent F. R. Grother.

HOUSER, J.—It appears that some time during the year 1917, in the state of Idaho, one Claude S. McKendrick, who at that time was a resident of this state, was divorced by his wife. By the decree of divorce the custody of Daniel Mc-Kendrick, a minor son of the parties, was awarded to the mother, although no provision for alimony to her, nor support by the father for the son, was contained in the decree. A few months after the decree of divorce was granted the mother of the boy was married to a man named Rodgers. On June 23, 1923, in the course of his industrial employment, the father of the boy met with an accident which resulted in his death; and thereafter in pursuance of an application to the respondent Commission for adjustment of compensation, an order of award was made in favor of the minor son as a dependent of the deceased.. Upon such basic facts petitioner seeks a review of the proceedings had before the respondent Commission.

An examination of the record herein develops further material facts as follows: At the time when the divorce was granted the son Daniel was a small boy. Thereafter, up to about a year preceding the death of his father, he lived with his grandparents in a small town in the state of Idaho and there attended school, following which, for a period of about one year, he lived in said state with his mother and his stepfather on a ranch—during all of which time the father sent to his son various amounts of cash, aggregating approximately $50 per year, besides miscellaneous items of clothing.

However, the boy was not wholly dependent upon his father for support. When money was received by him, if not immediately needed for the purpose of purchasing necessary clothing, etc., it was placed in a savings bank account which, at the time of the hearing before the commission, showed a credit of approximately $185, which included $100 received from the sale of two Liberty bonds of the face value of $50 each, one of which had been given to the boy by his father and the other by his mother. While it appeared that, with the exception of an interest in an unsettled estate of the value of $1,000 owned by the stepfather, neither he nor the mother of the boy was possessed of any means or property of any sort, nevertheless they were willing to provide for the boy's support and give him such care and maintenance as lay within their power; but that "at the present time" they were financially unable to provide for his education; "his father said he would look out for his education, and for that he was dependent upon his father—for an education." The stepfather was "just working" on his father's ranch; had no charge "of the selling or income of the ranch," and received no salary. As testified by him, "Dad does all that . . . I get all I want to eat; clothing and a home—ought to be satisfied these days with that much." On the other hand, at the time the decree of divorce was granted to the mother of the boy the father agreed to help take care of his son. Regarding that matter, in part the mother testified:

"A. He (the father) asked that Dan—he always wanted to do something to help Dan, and when Mr. Rodgers and I were married he asked his mother not to have Dan adopted, that he wanted to be able to provide and help to educate Dan, and he thought that if he were not adopted that he would have a better opportunity—he asked for him not to be adopted, and he never has been. . . . He (the father) was willing to help take care of Dan, that is, to help when he could, . . . because he said he would rather leave the alimony out and rather help, to do things to help and not have it in the decree, . . . ; that he would help to take care of him (the son), but he didn't want the alimony part put in the decree."

■ As stated by the petitioner, "the ultimate question of law is whether a father, a resident of this state, is under a legal obligation to support his minor child, residing at all

times in another state, and in the legal custody of its mother by virtue of a decree of divorce given to the mother by the courts of the state in which she and the child reside, which decree makes no provision whatsoever for alimony, or for support of the minor by the father, the minor having been supported almost entirely by his stepfather, of whose family he is a member.''

Whatever may be said of earlier decisions, it now seems to be the settled rule of law in this state that by no act, conduct, or arrangement of whatever sort may a parent shift from his shoulders the legal responsibility and moral duty to support his minor child. It is an absolute, inalienable right enjoyed by the child which no form of contract between the parents, nor alteration of the domestic status of either of them, may affect. Were the rule to the contrary, it is readily conceivable how a minor child of a rich father (by reason of the divorce of its parents and the subsequent marriage of the mother to a possibly shiftless and impecunious man who, under the law, on taking the child into his household might become legally liable for the maintenance of the child) might be deprived of an education and the bare necessities of life, or even reach such a state of destitution as to become a public charge. Substantially the authorities dealing with such a situation are reviewed in the case of *Federal Mutual Liability Ins. Co.* v. *Industrial Acc. Com.*, 195 Cal. 283 [233 Pac. 335]. It is there held that a father, from whom his wife has secured a decree of divorce, may not, by reason of any contractual arrangement between the parties, escape his legal, bounden duty to support the minor child of the marriage. Although authorities other than those there considered might be cited, at most it would be but a work of supererogation to herein set forth the facts and the law pertaining to each of such cases. It may suffice to attract attention to some of them by citation only. See *Continental Casualty Co.* v. *Pillsbury*, 181 Cal. 389 [8 A. L. R. 1110, 184 Pac. 658]; *Sherer & Co.* v. *Industrial Acc. Com.*, 182 Cal. 488 [188 Pac. 798]; *Pacific Gold Dredging Co.* v. *Industrial Acc. Com.*, 184 Cal. 462 [13 A. L. R. 725, 194 Pac. 1]; *Svoboda* v. *Superior Court*, 190 Cal. 727 [214 Pac. 440]; *Llewellyn Iron Works* v. *Industrial Acc. Com.*, 191 Cal. 28 [214 Pac. 846].

Specifically, the point is advanced by petitioner that because in the instant case the child was a member of the household of his stepfather, who, under the law, was liable for the support, and who in fact at the time of the death of the father of the child in large part was supporting the child, a case of dependency for support on the father of the child was not presented; and in connection therewith it is contended that at the same instant of time the child could not be legally dependent upon each of two (*quasi*) fathers for support.

Section 14 (a) of the Workmen's Compensation, Insurance, and Safety Act (Stats. 1917, p. 831) provides in part that it shall be conclusively presumed that a child under the age of eighteen years "is wholly dependent for support upon a deceased employee." In principle, the point to which attention has been directed is ruled in *Federal Mutual Liability Insurance Co.* v. *Industrial Accident Commission,* 187 Cal. 469 [202 Pac. 664]. The case is elaborately considered and it is there held that a minor child was entitled to compensation as a dependent of a man with whom her mother was living as his wife without ever having been married to him, notwithstanding the fact that the father of the child was living, but who contributed nothing to the support of the child. A part of the syllabus of the case is to the effect that "the right of a minor to compensation as a dependent member of the family of an employee is not affected by the fact that the father of the minor is legally liable for its support . . . "

The facts in the case of *Federal Mutual Liability Ins. Co.* v. *Industrial Acc. Com., supra,* resemble those in the instant case. Therein it appeared that the father and the mother of the minor child were divorced and the custody of the child was awarded to the mother. The mother remarried and removed to Mexico, where she thereafter resided—the child being left in this state with its uncle and aunt. It appeared that the cost of providing necessaries for the child was approximately $75 per month, of which amount the father contributed $35 or $40 per month. Relying upon the conclusive presumption of total dependency under the terms of section 14 (a) of the Workmen's Compensation, Insurance, and Safety Act (Stats. 1917, p. 831), it was ruled that the Industrial Accident Commission was justi-

fied in making an award to the child on account of the accidental death of the father.

In accord with the principle of law as announced in the foregoing authorities, it is ordered that the award be and it is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 26, 1928, and an application by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 30, 1928.

All the Justices present concurred.