[No. 39273.    Department Two.    December 21, 1967.]

ANDREW CALLAHAN, *Respondent*, v. KEYSTONE FIREWORKS MANUFACTURING COMPANY *et al., Appellants.*\*

\*Reported in 435 P.2d 626.

*Lycette, Diamond & Sylvester* and *John P. Lycette, Jr.*, for appellant.

*Turner, Stoeve & Layman, John G. Layman*, and *Craig C. Kosonen*, for respondent.

WARD, J.†—The plaintiff, Andrew Callahan, a resident of Coeur d'Alene, Idaho, was seriously injured as a result of the premature explosion of an aerial bomb during a fireworks display which the Coeur d'Alene Junior Chamber of Commerce was firing from a barge anchored in Lake Coeur d'Alene on July 4, 1962. The plaintiff was one of a 12-man team which was putting on the fireworks display as a part of that organization's community service activities.

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

The aerial bombs were fired from a battery of 11 metal mortar tubes closed at the bottom and placed in wooden boxes filled with sand. The bombs were so constructed that on ignition of a long firing fuse, the fire was led to a small propellant charge in the bottom of the bomb. The firing fuse also led to a time fuse in the top of the bomb which was intended to delay setting off a heavy explosive charge until the bomb had been propelled into the air.

The firing sequence of the fuses in the bomb which injured plaintiff did not, however, operate as intended. Instead, the heavy explosive charge in the bomb exploded while the bomb was still in the mortar tube, shattering the metal tube into fragments and inflicting injury on all 12 men on the firing team.

The plaintiff brought action against defendant John Greenlee, a licensed pyrotechnician and independent fireworks distributor from whom the Junior Chamber of Commerce had purchased the fireworks. Greenlee did business as Greenlee Fireworks Company near Spokane, Washington, which is about 30 miles from Coeur d'Alene. Plaintiff also made Keystone Fireworks Manufacturing Company (which will be referred to as Keystone) a party defendant. Keystone operates a manufacturing establishment for the production of fireworks at Dunbar, Pennsylvania, and another in the state of Maryland. There was evidence from which the jury could find that the bomb which prematurely exploded was manufactured by Keystone, shipped by truck to Greenlee in Spokane, and included in the fireworks resold by Greenlee to the Junior Chamber of Commerce for its July 4, 1962, fireworks display.

The jury's verdict was in favor of Greenlee, but against Keystone in the sum of $35,000. Keystone's appeal from the judgment entered on the verdict presents three issues for determination: (1) Did the court err in instructing the jury on Keystone's duty to warn; (2) was the evidence sufficient to make a jury case on either an implied warranty or negligence theory; (3) should defendant's chal-

lenge to the Washington court's jurisdiction over Keystone have been sustained.

The court gave instruction No. 15 to which defendant excepted. It reads:

> You are instructed that one who manufactures or sells an article which he knows or should know is likely to be dangerous when used in the manner or for the purpose for which it was designed has a duty to use reasonable care to give warning of such danger to those whom he should expect to use the article if he has reason to believe that they will not discover the danger.

Keystone does not challenge the instruction as an incorrect statement of the law, but argues that under both the pleadings and the facts of the case, the instruction should not have been given because it was inapplicable.

The plaintiff pleaded negligence, generally, and also pleaded failure to warn as one of the specific charges of negligence. The defendant, however, claims that the plaintiff failed to allege in his complaint that Keystone had a duty to warn.

The word "negligence" itself connotes failure of duty to exercise due care. It is not necessary to specifically allege that the duty to exercise due care included the duty to warn. The claim of negligence, generally, and failure to warn, specifically, were sufficient under Rule of Pleading, Practice and Procedure 8, RCW vol. 0, to give the defendant notice that all elements of the claim might be explored during the trial.

The court properly gave instruction No. 15 because there was evidence from which the jury could find that Keystone was aware of the danger inherent in its bombs, but gave neither warning of the danger of premature explosion nor instruction on the proper method of handling and firing the bombs purchased through its distributor, Greenlee, so as to minimize danger of injury.

Ernest DeBlasio, co-owner of Keystone testified that a defect in the fuse could result in a premature explosion of the bomb. He further testified:

Q. Does your factory include any instructions or warning material with the salutes when they are packed? A. You mean instructions with it? Q. Yes. A. Well, we put the label on each shell but when we send them to a jobber—to a bona fide jobber, we don't—just a mark over there "18 inch salute." Q. So then the salutes that were shipped to John Greenlee in 1962 did not have any warning label or instructions on them? A. No. Just had "18 inch salutes."

On all direct factory sales, which did not pass through a distributor, Keystone included proper warnings and instructions with each shipment. Why such warnings were not given when its products were sold through distributors such as Greenlee, was not satisfactorily explained. The jury might well conclude that if Keystone found that warning and instructions were necessary on direct factory sales, they were equally necessary on fireworks passing to the user through its distributors.

■ The general rule is stated in 76 A.L.R.2d at 16 as follows:

The rule as to when a manufacturer or seller must warn (or, stated differently, when he will be held negligent if he fails to warn) is this: a manufacturer or seller of a product which, to his actual or constructive knowledge, involves danger to users has a duty to give warning of such danger.

Keystone further claims that instruction No. 15 should not have been given because the danger was obvious to the plaintiff and the manufacturer has no duty to warn of a danger which is obvious and known. Keystone's position would be sound if there was no issue of fact with respect to the obviousness of the danger. *Dalton v. Pioneer Sand & Gravel Co.*, 37 Wn.2d 946, 227 P.2d 173 (1951). However, in this case, under the evidence, it would have been error if the court had determined as a matter of law that the plaintiff was foreclosed from recovery because he knew or should have known that Keystone's bombs were subject to premature explosions while in the mortars. The jury could have found that the explosion resulted from a defect in the fuses or fuse connections concealed by the outer wrappings

enclosing the bomb and its interior fuses, and that there was no danger of a premature explosion except when a bomb was manufactured with such a concealed defect. There was evidence from which the jury could have found that Keystone was aware of such danger and that plaintiff was not.

Keystone claims error because the court failed to either dismiss the plaintiff's case at the conclusion of the testimony, grant a new trial or grant judgment notwithstanding the verdict. In its supporting argument defendant claims that plaintiff did not prove any defect in the aerial bomb which caused his injuries. The bomb was completely destroyed in the explosion, so, obviously, a defect in manufacturing could be proven only by circumstantial evidence. To prove circumstantially that the bomb was defective when it left the factory, the plaintiff produced all witnesses through whose hands the bomb had passed with the exception of the truck driver selected by Keystone to transport the fireworks from the Keystone factory to Greenlee's warehouse in Spokane. These witnesses presented uncontradicted evidence that the bombs suffered no injury or damage from the time of receipt by Greenlee until the explosion occurred, that the bomb which prematurely exploded was in exactly the same condition when fired on the barge in Lake Coeur d'Alene as when received by Greenlee, and that when the bombs were unloaded in Spokane they appeared to be undamaged.

If the fuse was damaged while enroute from the factory to Greenlee, as a result of improper crating and packing, this would be a defect for which the defendant Keystone would be liable. This was one of the alternative charges of negligence made by the plaintiff against Keystone and found some evidentiary support in a letter written by Keystone to Greenlee stating:

[O]n the 18 inch salutes, the only thing I know, we must pack these more carefully next year. Evidently the timer is being bumped hard or something in transportation . . . . Yes, must pack these very carefully next year. .

This letter was written in answer to Greenlee's letter advising Keystone of the premature explosion.

Ernest DeBlasio, a co-owner of Keystone and supervisor of its manufacturing, testifying as an expert for defendant, could find only two possible causes of the premature explosion; either "something defective in the fuse" or the placing of the bomb in the mortar tube upside down.

The defendant did not present any evidence to support his alternative hypothesis that the explosion was caused by firing the bomb upside down. The plaintiff, however, presented evidence sufficient to permit the jury to reject this hypothesis. Members of the firing team on the barge testified that they observed the loading of the bomb which exploded and that it was placed in the mortar right side up.

■    Where there are no eyewitnesses to establish the proximate cause of an accident, and two alternative hypotheses are presented, under only one of which the defendant could be held liable, this court has applied as a test of the sufficiency of the proof of such hypothesis to make a jury case the rule set out in *Gardner v. Seymour*, 27 Wn.2d 802, 808-09, 180 P.2d 564 (1947):

> The test to be applied here is whether the jury could have determined that the appellants were liable as a reasonable inference from the evidence, or whether the verdict rests on conjecture. As was said in *Home Ins. Co. v. Northern Pac. R. Co.*, 18 Wn. (2d) 798, 802, 140 P. (2d) 507, 147 A.L.R. 849:

> "The rule is well established that the existence of a fact or facts cannot rest in guess, speculation, or conjecture. It is also the rule that the one having the affirmative of an issue does not have to make proof to an absolute certainty. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the thing in question, such as the occurrence of a fire, happened in such a way as to fix liability upon the person charged therewith than it is that it happened in a way for which a person charged would not be liable. In applying the circumstantial evidence submitted to prove a fact, the trier of fact must recognize the distinction between that which is mere conjecture and what is a reasonable inference."

See also *Grange v. Finlay*, 58 Wn.2d 528, 364 P.2d 234 (1961); W. Prosser, Law of Torts § 44 at 222-23 (2d ed. 1955).

Keystone, in support of its argument on the insufficiency of the evidence to make a prima facie case, relies heavily on *Koktavy v. United Fireworks Mfg. Co.*, 160 Ohio St. 461, 117 N.E.2d 16 (1954). The basic facts of the Ohio case and this case are strikingly similar. Both were based on a premature ground-level explosion of an aerial bomb. Plaintiff in that case made no specific allegations of negligence and relied entirely upon the rule of res ipsa loquitur. There is, however, a vital difference in the proof adduced to show that the aerial bomb could not have been damaged while in the hands of the distributor. In the Ohio case Arrowhead was the distributor and the court points out at 471 that the rule of res ipsa loquitur, upon which the case was tried, could not be applied "since there is an entire absence of evidence that during at least two months' custody of the bomb by Arrowhead one or more of the various causes of damage to such bomb resulting in its defectiveness could not reasonably have happened." The court held that in the absence of such evidence, there was a reasonable hypothesis that the bombs, while in the possession of the distributor, could have been subjected to dampness or mishandling by employees of Arrowhead. The Ohio court therefore sustained a challenge to the sufficiency of the evidence.

There is no such evidentiary void in this case. John Greenlee, to whom Keystone delivered the load of aerial bombs about June 15, 1962, testified that he unpacked the cartons of bombs and observed the condition of the bombs, found no bombs damaged or broken, no tearing of the paper cover, and no evidence of exposure to water or dampness. He testified that the bombs were handled with proper care and that no damage was done to the bombs while in his possession. The fireworks were kept under lock and key and no one else had access to the stock. They were kept dry and free from damage at all times.

The plaintiff produced evidence sufficient to permit the jury to reject every possible cause of the premature explosion except a defect due to improper manufacture, assembly or handling while in Keystone's possession.

Finally, on this assignment of error, the defendant Keystone claims that it cannot be held liable because of a disclaimer of liability contained in the acknowledgment of the order from Greenlee. Defendant relies on the rule stated in *Gibson v. California Spray-Chemical Corp.*, 29 Wn.2d 611, 620, 188 P.2d 316 (1948): *"Where a purchaser accepts goods with notice of disclaimer of warranty,* there can be no recovery against the vendor upon a claimed breach of warranty." (Italics ours.)

■ If there be anything in the record showing that the ultimate purchaser of the goods took with knowledge of such disclaimer of liability, the appellant has failed to point it out in his brief. As we said in *Nakanishi v. Foster*, 64 Wn.2d 647, 655, 393 P.2d 635 (1964): "A disclaimer of warranty does not run with the thing itself." We have read the entire record and have not found the evidence necessary to support this claim of error.

Keystone officers admitted that it employed no safety inspection service as a part of its manufacturing process. There was evidence from which the jury could reasonably infer that inspection was possible during assembly of the fuse mechanism, and that the danger of injury from explosion was directly related to malfunction of the fuses and that the incidence of such malfunction was frequent enough that failure to inspect would constitute negligence.

■ Failure to inspect was one charge of negligence relied on by the plaintiff. The plaintiff's action should not be dismissed if he has proven any one of the charges of negligence relied on and if there be evidence from which the jury can determine that such negligence was the proximate cause of plaintiff's injuries. See Annot. 6 A.L.R.3d at 91 (1966), Manufacturer's Duty to Test or Inspect as Affecting His Liability for Product-Caused Injury.

Defendant Keystone, in the trial court, challenged the personal jurisdiction of the courts of the state of Washington over it and assigns error to the denial of its challenge.

In 1959, the Washington State Legislature enacted what is generally known as the "long arm" statute, RCW 4.28.185. The portions of the statute pertinent to this action read:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state;

(c) The ownership, use, or possession of any property whether real or personal situated in this state;

(d) Contracting to insure any person, property or risk located within this state at the time of contracting.

(2) Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state.

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Keystone is a Pennsylvania corporation engaged in the manufacture of fireworks in Pennsylvania and Maryland. It claims that its business methods provide no minimal contacts with the state of Washington sufficient to support the taking of personal jurisdiction over it under the provisions of the above statute. Its claim is supported by a showing that it maintains no office, no agent, no salesmen, no warehouse, nor any stock of merchandise in the state of Washington, and that all orders are taken through catalog sales and shipped by licensed carriers.

The plaintiff, however, points to evidence showing the following business contacts between Keystone and the state of Washington: (1) In the 10-year period, 1955 through 1964, Keystone sold and shipped over $160,000 of its manufactured products to five distributors scattered throughout the state of Washington; (2) sales catalogs from which the dealers selected and ordered fireworks were mailed to the dealers by Keystone; (3) Keystone's general manager called on a distributor, Zebra Fireworks at Tacoma, Washington, on one occasion "on business for or while acting in official capacity for Keystone Fireworks Manufacturing Company"; (4) there was evidence from which the jury could find that the aerial bomb which prematurely exploded and injured the plaintiff was included in a shipment of fireworks sold by Keystone and delivered to John Greenlee at Spokane, Washington, in June 1962, by a carrier selected by Keystone; (5) Keystone answered an interrogatory submitted to it by plaintiff as follows:

INTERROGATORY No. 20: Did you apply to the Washington State Fire Marshal in care of the Insurance Commissioner of the State of Washington for a license to sell fireworks in the State of Washington during the year 1962 and receive a license from the State of Washington, said license being designated No. 3?

Answer. Yes.

The license was issued February 6, 1962. Keystone later amended its answer to the interrogatory to the effect that it was issued only a manufacturer's license. The permit granted, however, included within its terms, authorization to sell fireworks within the state of Washington to "state-licensed wholesalers."[1]

---

[1] The reason why Keystone applied for and received a manufacturer's license does not appear from the record. It is logical to assume, however, that such license was acquired by Keystone by reason of an administrative determination made by the state fire marshal and later (December 21, 1962) supported by an opinion of the attorney general, AGO 61-62, No. 186, that the transportation, possession, sale or discharge within the state of Washington of commercial fireworks, manufactured outside the state was illegal under the state fireworks law,

834

In *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963), this court considered the five United States Supreme Court decisions, *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 Sup. Ct. 154, 161 A.L.R. 1057 (1945); *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 94 L. Ed. 1154, 70 Sup. Ct. 927 (1950); *Perkins v. Benquet Consol. Mining Co.,* 342 U.S. 437, 96 L. Ed. 485, 72 Sup. Ct. 413 (1952); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 2d 223, 78 Sup. Ct. 199 (1957); and *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 Sup. Ct. 1228 (1958), which set out a much broader concept of due process of law when applied to the court's right to assert personal jurisdiction over non-resident individuals and corporations than formerly existed. It cannot be denied that the broader concept enunciated in the cases resulted directly in the enactment of the first of the "long arm" statutes in Illinois in 1955 and 4 years later in the enactment of a similar statute in Washington, RCW 4.28.185. It may be noted that the United States Supreme Court in the 9 years which have elapsed since its decision in *Hanson v. Denckla, supra,* has declined to review any of the numerous cases arising out of either state or federal courts' decisions establishing the scope and limitations of jurisdiction in personam over out-of-state residents under the "long arm" statutes of the several states which have followed Illinois. It may be assumed, therefore, that for the past 9 years and for the present, the United States Supreme Court deems its views expressed in the five cases above cited, sufficient and adequate to illuminate and make understandable what Justice Black, in *International Shoe Co. v. Washington, supra,* terms the "vague due process clause"

RCW 70.77.385 and 70.77.475, without first obtaining a manufacturer's license such as Keystone obtained. The Washington Administrative Code, 212-16-020, adopted June 1, 1962, states the public policy which found expression in the enactment of the state fireworks law as follows: "Because of numerous fires, injuries, and deaths resulting from the discharge of fireworks, the state legislature has enacted laws to govern the manufacture, importation, sale, distribution and discharge of fireworks in Washington in order that the risk of fire and hazard of injury may be reduced to a minimum."

when applied to the constitutional rights of the nonresident when touched by the "long arm" statute.

In this state, when measuring the rights of such out-of-state residents against the factual situation in his case, the length and grasping power of the "long arm" statute process must be limited by both the statutory provisions of RCW 4.28.185 and also by the defendant's constitutional rights to due process as currently defined in the highest court's decisions.

In *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra,* at 115-16, we attempted to summarize and set out three criteria which should be applied in viewing the background of facts in each case against the rights of the nonresident defendant. These are:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. (Footnotes omitted.)

Criterion (1) is a capsulized statement of the statutory requirements set out in RCW 4.28.185(1) (a) and (b). Criterion (2) expresses the limitation set out in RCW 4.28.185(1) and (3). Criterion (3) is not based on anything in the statute, but is an attempt to make less vague the factual considerations which may have weight with the court in determining whether the nonresident's constitutional right to due process of law has been ignored. Without question, the statutory requirements of criteria (1) and (2) were met when Keystone received a fireworks license and shipped its fireworks into this state for resale. Plaintiff's cause of action was intimately connected with those activities in this state, and we, therefore, pass to a discussion of criterion (3).

■ Justice Traynor of the Supreme Court of California, in *Fisher Governor Co. v. Superior Court of City & Cy. of San Francisco*, 53 Cal. 2d 222, 347 P.2d 1 (1959), set out the considerations proper under our criteria (3) even more specifically. He listed these as follows at 225-26:

The interest of the state in providing a forum for its residents (*McGee v. International Life Ins. Co.*, 355 U. S. 220, 223 [78 S. Ct. 199, 2 L. Ed. 2d 223]) or in regulating the business involved (*Travelers Health Assn. v. Virginia*, 339 U. S. 643, 647-648 [70 S. Ct. 927, 94 L. Ed. 1154]); the relative availability of evidence and the burden of defense and prosecution in one place rather than another (*McGee v. International Life Ins. Co., supra*, 355 U. S. 220, 223-224; *Henry R. Jahn & Son v. Superior Court, supra*, 49 Cal.2d 855, 861-862; *Carl F. W. Borgward, G.M.B.H. v. Superior Court, supra*, 51 Cal.2d 72, 79; *Cosper v. Smith & Wesson Arms Co., supra, ante*, pp. 77, 83); the ease of access to an alternative forum (*Travelers Health Assn. v. Virginia, supra*, 339 U. S. 643, 648-649); the avoidance of multiplicity of suits and conflicting adjudications (*Henry R. Jahn & Son v. Superior Court, supra*, 49 Cal.2d 855, 862; *Carl F. W. Borgward, G.M.B.H. v. Superior Court, supra*, 51 Cal.2d 72, 79; *Gordon Armstrong Co. v. Superior Court*, 160 Cal. App. 2d 211, 219 [325 P.2d 21]; see also, *Atkinson v. Superior Court*, 49 Cal.2d 338, 347-348 [316 P.2d 960]); and the extent to which the cause of action arose out of defendant's local activities (*International Shoe Co. v. Washington, supra*, 326 U. S. 310, 319; *McGee v. International Life Ins. Co., supra*, 355 U. S. 220, 223; *Hanson v. Denckla*, 357 U. S. 235, 251-253 [78 S. Ct. 1228, 2 L. Ed. 2d 1283]; *Henry R. Jahn & Son v. Superior Court, supra*, 49 Cal.2d 855, 860-861, and cases cited; *Carl F. W. Borgward, G.M.B.H. v. Superior Court, supra*, 51 Cal.2d 72, 79; *Cosper v. Smith & Wesson Arms Co., supra, ante*, pp. 77, 83; *Gordon Armstrong Co. v. Superior Court, supra*, 160 Cal. App. 2d 211, 219-220; *Florence Nightingale School of Nursing v. Superior Court*, 168 Cal. App. 2d 74, 81-83 [335 P.2d 240]; *Holtkamp v. States Marine Corp.*, 165 Cal. App. 2d 131, 138-139 [331 P.2d 679]; see also *Owens v. Superior Court*, 52 Cal.2d 822, 830-831 [345 P.2d 921]) are all relevant to this inquiry. (See 108 U. of Pa. L. Rev. 131.)

See also the court's conclusion reached on a review of the five United States Supreme Court decisions in *Aftanase v.*

*Economy Baler Co.,* 343 F.2d 187 (8th Cir. 1965) at 195-97; also 2 J. Moore, Federal Practice § 4.25 (5) at 1171-73 (2d ed. 1966).

There are a number of significant factors in the present case, each of which merits consideration by this court, in determining whether Keystone's constitutional right to due process of law has been ignored in taking jurisdiction in personam over it under RCW 4.28.185. Following our itemization of each of these factors we append citations of decisions where these particular factors, as related to the problem of due process, have been discussed more fully than the length of this opinion justifies. (1) The potentially dangerous nature of the product which Keystone has shipped into the state of Washington and the legitimate right of the courts of this state to provide a forum for the protection of any rights invaded as a result of defective manufacture of dangerous products so shipped into the state are factors which may be considered. The inherent danger of a defectively manufactured product which is shipped into the state bears on both the issue of the nature and quality of the contact and also the issue of fundamental fairness. *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305 (1963); *Aftanase v. Economy Baler Co., supra; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* and *Singer v. Walker,* 15 N.Y.2d 443, 209 N.E.2d 68, *cert. denied,* 382 U.S. 905, 15 L. Ed. 2d 158, 86 Sup. Ct. 241 (1965); *Elkhart Engr. Corp. v. Dornier Werke,* 343 F.2d 861 (5th Cir. 1965); *Velandra v. Reqie Nationale Des Usines Renault,* 336 F.2d 292 (6th Cir. 1964). (2) Keystone availed itself of the Washington market in order to obtain for itself the greatest possible economic benefits. It may be fairly inferred that these economic benefits were limited to Keystone only by the demand for its products. *Bullard v. Rhodes Pharmacal Co.,* 263 F. Supp. 79 (Mont. 1967). (3) The amounts received by Keystone from the sale of its products in the state of Washington were not insignificant. *Ewing v. Lockheed Aircraft Corp.,* 202 F. Supp. 216 (Minn. 1962). (4) Keystone solicited sales in the state of Washington through the distribution of catalogs

and through the activities of local independent distributors of its products. This method of obtaining distribution of its products in Washington did not produce isolated or sporadic sales, but resulted in a continuous and systematic distribution of its products in this state for at least 10 years. *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.* and *Singer v. Walker, supra; Aftanase v. Economy Baler Co., supra.* (5) Keystone is the party which took the initiative in the acts which resulted in bringing its products into the state of Washington and is the party receiving the economic benefit therefrom. *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra; Conn v. Whitmore,* 9 Utah 2d 250, 342 P.2d 871 (1959); *Fourth Northwestern Nat'l Bank of Minneapolis v. Hilson Indus., Inc.,* 264 Minn. 110, 117 N.W.2d 732 (1962). (6) Keystone knowingly and purposefully established the contacts in the state of Washington and is charged with foreseeability of injury which might result from defective products brought into the state and with the foreseeability of the necessity of defending itself in courts here from claims which might arise from the sale of any such defective products. *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967). (7) John Greenlee, a resident of Spokane County, Washington, was a party defendant. There is no claim that he was made a defendant solely for the purpose of obtaining jurisdiction in Spokane County. There is no claim that witnesses and evidence were less available in Spokane County than at Coeur d'Alene, Idaho. All parties could be brought together in one suit in Spokane County. *Nixon v. Cohn, supra; Hoagland v. Springer,* 39 N.J. 32, 186 A.2d 679 (1962), a per curiam affirmance adopting the reasoning of the appellate division at 75 N.J. Super. 560, 183 A.2d 678 (1962); *Cosper v. Smith & Wesson Arms Co.,* 53 Cal. 2d 77, 346 P.2d 409 (1959). (8) Keystone sought to comply with the administrative regulations of the state of Washington which were adopted pursuant to the public policy of the state legislature as set out in the Washington State Fireworks Act. Keystone sought and for a number of years was granted a permit, on

its own application, which resolved in its favor any question of the legality of the sale, transportation, distribution and use of its commercial fireworks in the state of Washington. This constituted more than a minimal contact with this state by Keystone. *W. H. Elliott & Sons Co. v. Nuodex Prods. Co.*, 243 F.2d 116 (1st Cir. 1957).

Keystone relies on *State ex. rel. Western Canadian Greyhound Lines Ltd. v. Superior Court*, 26 Wn.2d 740, 175 P.2d 640 (1946), in support of its position that the cause of action in this case arose at Coeur d'Alene, Idaho, and therefore the Washington courts have no jurisdiction over Keystone. This case, decided in 1946, prior to the enactment of our present "long arm" statute, is not now determinative of the issue in this case. As we said in *Quigley v. Spano Crane Sales & Service, Inc.*, 70 Wn.2d 198, 201, 422 P.2d 512 (1967):

> The foregoing statute designedly enlarged jurisdiction in personam over nonresidents and foreign corporations by changing the traditionally narrow concepts of doing business in the state to the far broader and more widely inclusive but simpler standard described in the phrase "The transaction of any business within this state."

See also *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 430 P.2d 600 (1967).

█ It is, however, proper to examine the right of the courts of this state to take personal jurisdiction over a foreign corporation under the situation here presented, namely, the injury occurred in Idaho, caused by what the jury found was a defect in a product manufactured in Pennsylvania, sold to a distributor in Spokane, Washington, as a part of the general interstate distribution of the factory's output and resold in Spokane for use in Coeur d'Alene, Idaho. The "long arm" statutes are of such recent origin that this factual situation has been before the courts of only a few states.

A factually similar case was before the Court of Appeals of New York in *Singer v. Walker, supra.* Three cases are consolidated in the court's opinion which bears the title of the first case discussed, *Longines-Wittnauer Watch Co. v. Barnes & Reinecke Inc., supra.* In *Singer v. Walker, supra,*

the plaintiff, a 10-year old resident of New York was seriously injured when a geologist's hammer which he was using in Connecticut, broke and a chip of steel penetrated his eye. The hammer was manufactured by defendant Estwing Mfg. Co., an Illinois corporation, and bore a label "unbreakable tools—Estwing Mfg. Co." It was shipped f.o.b. from Illinois to defendant Walker, a dealer in geological supplies in New York City, purchased by the boy's aunt in New York and given to the boy as a gift. The hammer fragmented while the boy, with his father on a field trip in Connecticut, was using the hammer to break and split rock.

The Appellate Division of the Supreme Court of New York upheld jurisdiction of the court of that state under the "long arm" statute adopted in New York in 1962 (CPLR § 302). It was almost identical with RCW 4.28.185. The appellate division upheld jurisdiction on the "tortious act" theory. *Singer v. Walker,* 21 App. Div. 2d 285, 250 N.Y.S.2d 216 (1964). The court of appeals affirmed, but the majority rejected jurisdiction on the tort theory and upheld jurisdiction on the transaction of business theory.

> However, the question remains whether jurisdiction may be upheld under paragraph 1 on the ground that the appellant "transact[ed] * * * business within the state" and that the pleaded cause of action is one "arising" therefrom. It is clear that paragraph 1 is not limited to actions in contract; it applies as well to actions in tort when supported by a sufficient showing of facts. (See N. Y. Advisory Comm. Rep. [N. Y. Legis. Doc., 1958, No. 13], p. 39; see, also, Notes of Commissioners on Uniform State Laws, Uniform Laws Ann., vol. 9B [Supp. 1964], p. 78.)
>
> The record, although conflicting in some respects, does establish certain facts as to which there is no substantial dispute—namely, that the appellant has shipped substantial quantities of its products into this State as the result of solicitation here through a local manufacturer's representative and through catalogues and advertisements and that the injury-causing hammer, purchased from a New York dealer, was one of such products. The Appellate Division, in view of its conclusion predicated on paragraph 2, apparently found it unnecessary to consider the applicability of paragraph 1. But in its opinion the court

did call attention to facts which demonstrated that the appellant transacted business here and which, in its view, provided the requisite nexus with this State demanded by due process.

We hold that the appellant's activities in this State are sufficient to satisfy the statutory criterion of transaction of business as well as the constitutional requirement of "minimum contacts". (See *International Shoe Co. v. Washington,* 326 U. S. 310 319-320, *supra; McGee v. International Ins. Co.,* 355 U. S. 220, 223, *supra.*) For the reasons we gave in rejecting 'a similar contention in the *Longines-Wittnauer* case (*supra,* pp. 456, 458), *we do not deem it determinative, as urged by the appellant, that the formal execution of its sales contracts may have occurred in Illinois rather than New York. Nor is it a controlling consideration that the actual injury happened to take place in Connecticut, since the cause of action asserted is clearly one "arising from" the purposeful activities engaged in by the appellant in this State in connection with the sale of its products in the New York market.* (Italics ours.) *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* and *Singer v. Walker,* 15 N.Y.2d 443, 209 N.E.2d 68, *cert. denied,* 382 U. S. 905, 15 L. Ed. 2d 158, 86 Sup. Ct. 241 (1965), at 466-67.

Judge Van Voorhis in a concurring opinion referring to "the new legal doctrine known as products liability," states at 469: "Neither courts nor textwriters are certain whether these theories of liability sound chiefly in contract or in tort."

Judge Desmond in a separate concurring opinion, equates "tortious act" with "part of a tort," and would find jurisdiction in New York under the tort theory on the basis of the defective manufacture of the hammer, distribution of the purchaser and the resulting injury.

Other decisions which uphold the jursidiction of a forum state in which an allegedly defective article was either resold or the contract of sale was partly performed, but where the article was manufactured in another state, and the injury arising from the use of the article occurred in a third state are: *Roland v. Modell's Shoppers World of Ber-*

*gen Cy.,* 92 N.J. Super. 1, 222 A.2d 110 (App. Div. 1966); *Ewing v. Lockheed Aircraft Corp., supra.*

We conclude that Keystone's right to due process of law was not denied when its challenge to the personal jurisdiction of this state's courts over it was rejected by the trial court.

The judgment is affirmed.

FINLEY, C. J., DONWORTH, HUNTER, and NEILL, JJ., concur.

*Reported in 435 P.2d 526.