[No. 3181-1.    Division One.    June 14, 1976.]

BRADFORD C. LIZOTTE, *Respondent*, v. SUZANNE E. LIZOTTE, *Defendant*, THE STATE OF WASHINGTON, *Appellant*.

---

[9] *January v. Porter*, 75 Wn.2d 768, 453 P.2d 876 (1969); *Ogden v. Klundt*, 15 Wn. App. 475, 550 P.2d 36 (1976).

*Slade Gorton, Attorney General,* and *Kenneth Mac-Intosh, Assistant,* for appellant.

ANDERSEN, J.—

## FACTS OF CASE

In this divorce case, the State of Washington seeks to protect its statutory subrogation right against a divorced father for public assistance furnished by the State to support the father's minor child, at a time when the father was not fulfilling his support obligation as ordered by the divorce decree.

Two children were born of the marriage of Bradford C. Lizotte (hereinafter referred to as the father) and Suzanne E. Lizotte (the mother). The marriage terminated in divorce, with the custody of the eldest child being awarded to the father, and custody of the youngest, Cammien, going to the mother. The divorce decree entered on August 24, 1972, required the father to pay $60 per month for the support of his infant daughter Cammien, payments to commence 30 days after he obtained full-time employment.

The father contributed nothing to the support of Cammien from September 1972 through December 1973. During this same period of time, Cammien received monthly public assistance payments in a larger sum than the $60 per month which the father was supposed to be paying.

During this time when the State, rather than the father, was supporting the child, the Support Enforcement Division of the Department of Social and Health Services of the State of Washington (the Department) maintained contact with the father endeavoring to collect the $60 per month child support from him. Late in 1973, the father admitted to one of the enforcement officers that he had been earning take-home pay of approximately $500 per month since before the divorce decree was entered.

The Department was unsuccessful in getting any support assistance from the father so on December 7, 1973, it had the father personally served with a notice of support debt and demand for payment. This notice formally notified the

father that the Department was subrogated to the unpaid support obligation he owed under the divorce decree and demanded payment of same. For some reason not clarified in the record, a copy of this notice was not filed in the court file in the divorce case. Neither does the record reflect that the mother was served with a copy of the notice.

Thereafter on December 20, 1973, unknown to the Department and without notice to it, an order modifying the divorce decree was entered based on a stipulation between the mother and father. By such order, custody of the minor daughter, Cammien, was given to the father. The modification order also provided that it was

> ORDERED, ADJUDGED and DECREED that delinquent support owed by Plaintiff [the father] to Defendant [the mother] for past months as provided in the Decree of Divorce be and the same is hereby waived and fully satisfied.

Being unaware that the divorce decree had been modified, the Department on February 25, 1974, issued and served on the father's employer, an administrative order requiring the employer to withhold and deliver to the Department, the sum of $960 claimed to be owing by the father to the Department.[1] The father's attorney, electing to proceed against the administrative order in the divorce case, thereupon filed a motion to quash the Department's administrative order to withhold and deliver, and naming the Department as an additional defendant herein. This motion was based on the father's claim that his support obligation had been extinguished for all purposes by the modification of the divorce decree and that the Department was, therefore, entitled to nothing by its order.

The father's motion to quash came on for hearing before the court commissioner who had signed the order modifying the divorce decree. The commissioner denied the motion.

---

[1]Orders to withhold and deliver are authorized by RCW 74.20A.080 as a means whereby the Department can levy on a parent's income for a support debt owing. The order in this case provided a graduated schedule by which only a designated percentage of the father's income was required to be withheld.

Thereafter, at the request of the father's attorney, a revision hearing was held before a judge of the superior court pursuant to RCW 2.24.050. At that hearing, the trial court reversed the court commissioner's ruling and the Department's administrative order was quashed, thus terminating that support enforcement effort against the father.

The Department challenges neither the procedure by which it was brought into this divorce case nor the jurisdiction of the trial court. The Department appeals to this court seeking a ruling on the merits.

The record before us reflects that the Department caused its notice of appeal to be timely served on the father's then counsel of record, who has since withdrawn. No brief of respondent has been filed and no argument has been presented in this court on behalf of the father.

## ISSUES

Two issues are determinative of this appeal.

ISSUE ONE. What is the scope of appellate review when only the appellant has filed a brief and presented oral argument in this court?

ISSUE TWO. Can a party to a divorce decree cut off the State's subrogation right based upon public assistance paid by the State to support a child, upon a parent's failure to do so, by obtaining a modification of the divorce decree without notice to the State?

## DECISION

ISSUE ONE.

CONCLUSION. The scope of our review in this case is limited to determining if the appellant has made out a prima facie case of error.

█ The rule, where the respondent (father) has not filed a brief in this court or presented oral argument, is that we will limit our review to determining if the appellant (Department) has made out a prima facie case for error and if it has, we will reverse and determine the nature of the remand. *Riley v. Sturdevant*, 12 Wn. App. 808, 811, 532 P.2d 640 (1975); *Aquarian Foundation v. KTVW, Inc.*, 11 Wn. App. 476, 478, 523 P.2d 969 (1974).

ISSUE TWO.

CONCLUSION. Neither the parents' agreement to forgive the father's child support obligation nor their obtaining a modification of the divorce decree so providing is effective to deprive the State of its statutory subrogation interest therein of which the parents had knowledge.

A parent's obligation to support and care for his or her child is a basic tenet of our society and law. *State v. Williams*, 4 Wn. App. 908, 912, 484 P.2d 1167 (1971). The extent of the father's financial obligation to his infant daughter, Cammien, was determined by the divorce decree to be $60 per month.

It is clear in reason, as well as law, that the primary obligation for the support and care of a child is on the parents who bring the child into the world rather than on the taxpayers of the State. RCW 74.20A.010.

In those cases where the State is obliged to step in and provide funds from the public treasury to insure that a child is properly provided for, as the Department was obliged to do here through the Aid to Families with Dependent Children Program (AFDC), it is the declared policy of this State that the resources of the responsible parents be utilized to the extent possible in order to relieve the burden otherwise borne by the general citizenry through public welfare programs. RCW 74.20A.010.[2]

---

[2]RCW 74.20A.010 states:

"Common law and statutory procedures governing the remedies for enforcement of support for financially dependent minor children by responsible parents have not proven sufficiently effective or efficient to cope with the increasing incidence of financial dependency. The increasing workload of courts, prosecuting attorneys, and the attorney general has made such remedies uncertain, slow and inadequate, thereby resulting in a growing burden on the financial resources of the state, which is constrained to provide public assistance grants for basic maintenance requirements when parents fail to meet their primary obligations. The state of Washington, therefore, exercising its police and sovereign power, declares that the common law and statutory remedies pertaining to family desertion and nonsupport of minor dependent children shall be augmented by additional remedies directed to the real and personal property resources of the responsible parents. In order to render resources more immediately available to meet the needs of

The public assistance monies paid by the Department for the benefit of the child herein gave rise to a statutory subrogation right in the Department to the unpaid monies owing by the father to the mother pursuant to the terms of the divorce decree. RCW 74.20A.030.[3]

---

minor children, it is the legislative intent that the remedies herein provided are in addition to, and not in lieu of, existing law. It is declared to be the public policy of this state that this chapter be construed and administered to the end that children shall be maintained from the resources of responsible parents, thereby relieving, at least in part, the burden presently borne by the general citizenry through welfare programs."

[3]RCW 74.20A.030 provides that:

any payment of public assistance money made to or for the benefit of any dependent child or children creates a debt due and owing to the department by the natural or adoptive parent or parents who are responsible for support of such children in an amount equal to the amount of public assistance money so paid: *Provided*, That where there has been a superior court order, the debt shall be limited to the amount provided for by said order. The department shall have the right to petition the appropriate superior court for modification of a superior court order on the same grounds as a party to said cause. Where a child has been placed in foster care, and a written agreement for payment of support has been entered into by the responsible parent or parents and the department, the debt shall be limited to the amount provided for in said agreement: *Provided*, That if a court order for support is or has been entered, the provisions of said order shall prevail over the agreement. The department shall adopt rules and regulations, based on ability to pay, with respect to the level of support to be provided for in such agreements, or modifications of such agreements based on changed circumstances.

The department shall be subrogated to the right of said child or children or person having the care, custody, and control of said child or children to prosecute or maintain any support action or execute any administrative remedy existing under the laws of the state of Washington to obtain reimbursement of moneys thus expended. If a superior court order enters judgment for an amount of support to be paid by an obligor parent, the department shall be subrogated to the debt created by such order, and said money judgment shall be deemed to be in favor of the department. This subrogation shall specifically be applicable to temporary spouse support orders, family maintenance orders and alimony orders up to the amount paid by the department in public assistance moneys to or for the benefit of a dependent child or children but allocated to the benefit of said children on the basis of providing necessaries for the caretaker of said children.

■ The father's obligation to pay the monthly sum required by the divorce decree became fixed each month at the time provided in the decree for payment. *Starkey v. Starkey,* 40 Wn.2d 307, 313, 242 P.2d 1048 (1952). Accrued installments of support money are vested and cannot be retrospectively modified. *Koon v. Koon,* 50 Wn.2d 577, 579, 313 P.2d 369 (1957); *Mathews v. Mathews,* 1 Wn. App. 838, 842, 466 P.2d 208 (1970).

In the present case, the father knew of the State's subrogation right. It also seems clear from the limited record before us that the mother did too. That the father owed $960 in unpaid support pursuant to the divorce decree is not controverted.

■ Although the State's subrogation right here under consideration is given by statute, rather than by equity or contract as in the usual case, it is a subrogation right nevertheless. In this case whereby this statute is being construed for the first time, we therefore have recourse to established subrogation principles.

It is a recognized rule of subrogation law involving insurance contracts that an insured's release of a wrongdoer from liability cannot defeat the insurer's rights against the wrongdoer when such release is given without the insurer's knowledge and when the wrongdoer has knowledge as to the insurer's right of subrogation under the contract. *City of New York Ins. Co. v. Tice,* 159 Kan. 176, 152 P.2d 836, 840 (1944). *See also General Ins. Co. of America v. Stoddard Wendel Ford Motors,* 67 Wn.2d 973, 976, 410 P.2d 904 (1966).

The situations in which that subrogation rule is applied are analogous to the situation here presented. We therefore

---

Debt under this section shall not be incurred by nor at any time be collected from a parent or other person who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status.

Subsequent to the commencement of the present action, this statute had been amended. Since the amendments do not affect our decision herein, RCW 74.20A.030 is here set out in its present form to avoid possible confusion.

hold that no act of the mother releasing the father from his accrued and unpaid obligation owing under the divorce decree can defeat the State's subrogation right against the father when such release was given without the State's knowledge and when the father had knowledge of the State's subrogation right under the statute.

The mother's agreement to waive and satisfy the support money judgment against the father and the modification of the divorce decree based thereon and entered without notice to the State were ineffective to defeat or extinguish the State's subrogation right against the father.

The Department has met its burden of establishing a prima facie case of error. *Riley v. Sturdevant, supra*; *Aquarian Foundation v. KTVW, Inc., supra.*

The trial court's order quashing the Department's administrative order of support enforcement is reversed and the cause is remanded for such further proceedings as are not inconsistent herewith.

FARRIS and CALLOW, JJ., concur.