**Ellen Ann JOHANSEN, Plaintiff and Appellee,**

v.

**Neal Duane JOHANSEN, Defendant and Appellant.**

**No. 13027.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 18, 1981.

Decided May 6, 1981.

Timothy P. Johnson, Vermillion, for plaintiff and appellee.

Thomas M. Issenhuth of Arneson, Issenhuth & Gienapp, Madison, for defendant and appellant.

DUNN, Justice.

This is an appeal by Neal D. Johansen (appellant) from an order which modified a judgment of divorce to provide for child support. We affirm.

Ellen A. Johansen (appellee) and appellant were granted a divorce on October 6, 1978, by way of a judgment entered in the Family Division of County Court, Murray County, Minnesota. Appellee was given custody of their one minor child, but the judgment left open the question of child support for future court proceedings. Paragraph XII of the Minnesota judgment provides:

> That respondent [Ellen A. Johansen] is capable of and has the means to adequately provide for the support of the minor son, the custody of whom has been awarded to respondent, and accordingly, the award of support is not presently required; however, at any time the respondent shall find herself in need of assistance in this regard, she may apply to this Court or any Court of Competent jurisdiction for relief in the form of an amended decree with respect to child support.

Soon thereafter, appellee and child moved to Vermillion, South Dakota, where she enrolled in the University of South Dakota. Appellant moved to Gillette, Wyoming, where he is employed as a grocery store manager.

By way of an affidavit and motion filed in a South Dakota circuit court in October of 1979, appellee sought implementation of the Minnesota judgment which allowed for a future determination of child support. Appellant was personally served in Gillette with an order to show cause. He does not dispute the validity of such service. A hearing on the order to show cause was held in Vermillion on November 16, 1979. Appellant did not personally appear, but his counsel made a special appearance on his behalf and moved to dismiss the action for lack of personal jurisdiction. The circuit court dismissed appellant's motion, made findings of fact and conclusions of law, and entered an order which modified the Minne-

sota judgment to provide for child support of $300 per month.

The sole issue raised on appeal is whether a South Dakota court has jurisdiction over a nonresident so that it can modify a foreign judgment of divorce to provide for child support where the only contact the nonresident has with South Dakota is that it is the domicile of the child. We hold that the South Dakota court does have such jurisdiction.

Our holding, as was that of the circuit court, is grounded upon SDCL 15–7–2(7), which states:

> Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing ... of any of the following acts:
>
> . . . .
>
> (7) Failure to support a minor child residing in South Dakota[.]

Appellant advances a circular argument which leaves one stranded in a classic "Catch 22." [1] Appellant urges that before the South Dakota courts may exert jurisdiction over him, SDCL 15–7–2(7) requires that there be a failure to support his minor child. The Minnesota court, however, did not impose a duty to furnish child support and actually found that there was no need for child support at that time. Therefore, appellant argues that he has not failed to support his child unless the Minnesota judgment is modified. But for a South Dakota court to modify that judgment it must have jurisdiction over appellant. This returns us to our starting point that a failure to support is needed for jurisdiction and that failure can only arise if the Minnesota judgment is modified, which cannot be done without jurisdiction. Admittedly, appellant's argument is ingenious and interesting; however, it is not compelling.

Although we find no specific statutory authority imposing a duty of support upon this appellant,[2] nor is there a court order for support (other than the one herein appealed from), "[these are] not exclusive; common law duties exist." *Kelley v. Iowa Department of Social Services*, 197 N.W.2d 192, 199 (Iowa 1972), *appeal dismissed* 409 U.S. 813, 93 S.Ct. 170, 34 L.Ed.2d 69 (1972). Statutes "granting courts the right to provide for child support payments, [do] not abrogate the common law duty on the part of either parent to support [his] children." *Ex Parte Holloway*, 490 S.W.2d 624, 628 (Tex.1973). See *Lutz v. Lutz*, 508 S.W.2d 955 (Tex.1974). It should be noted that the judgment here did not abrogate appellant's common-law duty to pay child support. It simply found that "support is not presently required," leaving the appellee free to apply for relief from any court of competent jurisdiction when needed.

We feel that a minor child has an inherent right to support from its natural parents. *Ebel v. Brown*, 70 Mich.App. 705, 246 N.W.2d 379 (1976).

> [A] father's duty to support his minor children rests upon not only moral law but legally upon the voluntary status of parenthood which the father has assumed. A divorce terminates only the relationship of husband and wife, and does not affect in any manner the parental relations or duties.

*Krause v. Krause*, 58 Wis.2d 499, 507, 206 N.W.2d 589, 594 (1973) (footnote omitted). See *Niesen v. Niesen*, 38 Wis.2d 599, 157

---

1. Appellant's argument is amazingly similar to the circular argument in J. Heller's "Catch–22" at 45–46 (1955), which gives rise to the phrase:

   ... Catch–22, ... specified that a concern for one's own safety in the face of dangers that were real and immediate was the process of a rational mind. [A pilot who] was crazy ... could be grounded. All he had to do was ask; and as soon as he did, he would no longer be crazy and would have to fly more missions. [A pilot] would be crazy to fly more missions and sane if he didn't, but if he was sane he had to fly them. If he flew them he was crazy and didn't have to; but if he didn't want to he was sane and had to .... 

2. Since this is not a divorce action in its current posture, we must look for statutory authority other than that contained in SDCL ch. 25–4. SDCL 25–7–7 provides that: "The parent entitled to the custody of a child must give it support ...." This would seem to indicate that appellee would have the primary duty of support because she has custody of the child.

N.W.2d 660 (1968). This court, in equally eloquent terms, has stated:

At common law the principal duties of parents to their children consisted of their maintenance, protection and education, imposed by principles of natural law and affection laid on them by nature herself by their bringing them into the world[.]

*State v. Zobel*, 81 S.D. 260, 269, 134 N.W.2d 101, 106 (1965). See *Matthews v. Matthews*, 71 S.D. 115, 22 N.W.2d 27 (1946). The number of jurisdictions recognizing this common-law obligation of support are legion. See *Pleasant v. Washington Sand & Gravel Co.*, 262 F.2d 471 (C.A.D.C.1958); *Southern California Edison Co. v. Industrial Acc. Com'n*, 92 Cal.App. 355, 268 P. 415 (1928); *Vicino v. Vicino*, 30 Conn.Sup. 49, 298 A.2d 241 (1972); *Nielsen v. Nielsen*, 93 Idaho 419, 462 P.2d 512 (1969); *Kelley v. Iowa Department of Social Services*, supra; *Kinsella v. Kinsella*, 181 N.W.2d 764 (N.D. 1970); *Lynch v. Armbruster*, 7 Ohio App.2d 1, 218 N.E.2d 624 (1966); *Lutz v. Lutz*, supra; *In re Custody of Miller*, 86 Wash.2d 712, 548 P.2d 542 (1976); *Lizotte v. Lizotte*, 15 Wash.App. 622, 551 P.2d 137 (1976). See generally *S. L. W. v. Alaska Workmen's Compensation Board*, 490 P.2d 42 (Alaska 1971). Consequently, we hold that a common-law duty to support one's minor child exists which is separate and distinct from any statutory obligation or divorce decree.

Even though we hold that appellant is obligated to support his minor child, we still must address the merits of the jurisdictional question. In *Ventling v. Kraft*, 83 S.D. 465, 471, 161 N.W.2d 29, 32 (1968) (footnotes omitted), we set forth the following oft-repeated jurisdictional formula:

Some courts in the consideration of the matter and in passing on similarly worded statutes have said three rules can be drawn from a combined reading of the foregoing cases against which future litigation of a like nature may be tested. These rules are: (1) The nonresident defendant must purposefully do some act or consummate some transaction in the forum state. . . . (2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. . . . (3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice. In the determination of the latter, consideration should be given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded to the respective parties, and the basic equities of the situation.

All of these elements must be satisfied in order to exercise personal jurisdiction over appellant.

In *Miller*, supra, the Supreme Court of Washington engaged in a similar analysis of this jurisdictional formula. Therein, the mother of four minor children sought an order to grant her child support and permanent custody of the children. The father was a nonresident. The trial court held that it lacked personal jurisdiction over the father.

On appeal, the Washington Supreme Court applied the same jurisdictional factors as we must.[3] Therein, they stated:

The first requirement is met because the father *purposefully* has failed to support his children since he delivered them to their mother in December 1974. The failure of a nonresident to perform his duty or obligation as imposed by law to support his natural children, whether they be domiciled or merely resident in this state, constitutes a tortious act as that term is contemplated by RCW 4.28.-185(1)(b).

---

**3.** The jurisdictional formula stated in *Ventling v. Kraft*, 83 S.D. 465, 161 N.W.2d 29 (1968), as shown at 83 S.D. 471, 161 N.W.2d 32 (n. 9), is at least partially based upon the Washington cases of *Tyee Const. Co. v. Dulien Steel Products, Inc. of Wash.*, 62 Wash.2d 106, 381 P.2d 245; and *Callahan v. Keystone Fireworks Man-*

*ufacturing Co.*, 72 Wash.2d 823, 435 P.2d 626 (1967). We find comfort in the fact that in *In re Custody of Miller*, 86 Wash.2d 712, 548 P.2d 542 (1976), the Washington Court applies the *Tyee* jurisdictional formula in a case similar to ours and reaches the same conclusion as we reach herein.

The next issue, one of general fairness, concerns the second element of [the] jurisdictional formula. It requires that the cause of *action arise from or be connected with* the . . . act. . . .

. . . .

In determining whether the respondent is accorded the "fair play and substantial justice" requirement of the . . . jurisdictional formula, this must be considered in context with and cannot be divorced from the nature of the underlying controversy which evoked this litigation. One also must keep in mind that the welfare of the children is the paramount concern, coupled with the secondary interests of the parents and the state in the resolution of this issue.

*Miller*, 86 Wash.2d at 719, 548 P.2d at 547 (emphasis in original).

■ As in *Miller*, the first element of the jurisdictional formula has been fulfilled. That element requires that appellant purposefully do some act in South Dakota. Here, appellant has purposefully failed to support his minor child who resides in South Dakota. Unlike the Washington Court, our route to jurisdiction is shortened by our long-arm statute, which specifically lists nonsupport as grounds for jurisdiction; thus, we need not engage in the analysis of tort concepts as was done in *Miller*.

The second element of the jurisdictional formula has also been complied with. That element requires that the cause of action arise from appellant's activities within the forum state. This presents little problem because the cause of action is a direct result of appellant's purposeful activity within the state, to-wit: nonsupport of his child.

Finally, the requirement of fair play and substantial justice militates against denial of jurisdiction. *Miller* states that the welfare of the child is the paramount concern. Public policy demands that this child receive its inherent right of support. Moreover, denial of jurisdiction would place an onerous burden upon appellee. She would be required, at great expense and inconvenience, to return to Minnesota or proceed to Wyoming to seek support for this child.

Were it not for the public policy requiring support of the child, this might be a very close question; however, the presence of such public policy, which the legislature recognized as sufficient to support jurisdiction in SDCL 15–7–2(7), tips the scales of fair play and substantial justice decidedly in favor of sustaining jurisdiction.

Since we hold that appellant had a common-law duty to support his children separate and distinct from the Minnesota judgment of divorce, this duty was sufficient to bring appellant within purview of the long-arm statute. Thus, we affirm the circuit court's order that provides for child support.

Accordingly, the order appealed from is affirmed.

MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C. J., and FOSHEIM, J., dissent.

WOLLMAN, Chief Justice (dissenting).

Granted that there is a common-law duty on the part of parents to support their minor children, how can it be said that appellant's failure, if it can be deemed such, to fulfill that duty was purposeful in the face of a judicial decree that on its face absolves him of any duty to provide support? True, appellant provided no support for his child, but then why should he have been expected to, given the provisions of the Minnesota judgment? Appellant should not now be haled into court in a foreign jurisdiction for breaching a duty that in the circumstances of this case exists only in the abstract.

I would hold that the trial court should have granted appellant's motion to dismiss.

I am authorized to state that Justice Fosheim, joins in this dissent.