658 P.2d 915

**Dawn Louise LESTER,**
**Plaintiff-Respondent,**

v.

**Theodore W. LESTER,**
**Defendant-Appellant.**

No. 13631.

Supreme Court of Idaho.

Jan. 17, 1983.

Rehearing Denied March 4, 1983.

Daniel L. Spickler, of Rapaich & Knutson, Lewiston, for defendant-appellant.

William H. Foster, Grangeville, for plaintiff-respondent.

HUNTLEY, Justice.

Respondent Dawn Louise Lester and appellant Theodore Lester were divorced on March 24, 1972. The divorce decree, adopting a portion of the parties' oral marriage dissolution agreement, set up a schedule requiring appellant to pay child support based on his "income", i.e., the higher his "income", the more child support he would be obligated to pay. On September 20, 1974, respondent brought an order to show cause asking that appellant be held in contempt for failure to pay the full amount of child support due. The trial court found the word "income" in the divorce decree to be ambiguous and, after taking evidence on the issue, determined that the parties intended it to mean "taxable income" as defined by the Internal Revenue Code.[1] The respondent appealed that finding, and the trial court's decision was upheld by this

---

1. The original wording of the decision of the trial court issued on August 6, 1975, which was appealed and affirmed in *Lester I*, reads as follows:

    "The Court finds however that the parties intended the word 'income' to mean 'taxable income,' as the word is defined and used for purposes of defendant's federal income tax return. The term 'taxable income' is the remainder of a person's adjusted gross income after subtracting the individual's itemized deductions and the exemption allowance which are allowed by the Internal Revenue Code."

Court in *Lester v. Lester,* 99 Idaho 250, 580 P.2d 853 (1978) (hereinafter *Lester I*).

For the years 1975 and 1978, appellant and his present wife, Jeannette, filed separate federal income tax returns, each claiming as individual income one-half of the community income. For those two years, in paying his child support appellant made payments based only on that income reported in his separate federal income tax return. On March 28, 1979, a motion for an order to show cause was again filed by the respondent. At hearings based upon that motion, the trial court determined that child support should have been calculated on the entire community income. The trial court found that the defendant (appellant) "willfully and deliberately used the device of filing separate income tax returns in each of the years 1975 and 1978 for himself and his present wife, Jeannette, in order to 'reduce' his taxable income to avoid paying the higher child support payments *required and contemplated* by paragraph 5 of the decree of divorce." (Emphasis added.)

Mr. Lester asserts the trial court erred in concluding that income "refers to the total community income of Mr. Lester and his present wife." Mr. Lester argues that his construction of the meaning of the term "income" is consistent with the law, the *Lester I* decision, and the intent of the parties as discernable from the divorce decree itself. As support for his proposition, he relies on community property law and federal income tax law. Basically, his argument is that since all property acquired during marriage is community property with each spouse having a vested share of one half, his income should be measured by that one half figure. In *Lester I* the court held that income as used in the divorce decree meant taxable income as defined in section 63 of the Internal Revenue Code. Under federal income tax law, Mr. Lester and his present wife can file separate returns, dividing the income received by them and declaring each half as individual income. We do not dispute Mr. Lester's right to split his income for income tax purposes. However, the effect will not reduce his child support obligation.

The issue on appeal is the meaning of the term "income" as used in the divorce decree.

■ When a court hearing an action to enforce a judgment finds the judgment ambiguous, it may refer to the circumstances surrounding the making of the judgment in attempting to interpret it. *Lester v. Lester,* 99 Idaho 250, 580 P.2d 853 (1978), citing *Evans v. City of American Falls,* 52 Idaho 7, 11 P.2d 363 (1932).

■ The term "income" remained ambiguous even after the court defined it in *Lester I.* The court stated: "The term 'taxable income' is the remainder of a person's adjusted gross income after subtracting the individual's itemized deductions and the exemption allowance which are allowable by the Internal Revenue Code." The finding was that the parties meant net income, but what *his* income consisted of is not implicit in the definition. At the trial in *Lester I,* Mr. Lester supplied affidavits in which he stated his income was that of the *entire community;* he submitted his joint tax returns to show what his income had been, and he never contended at the prior hearings that his income was one half of what he was asserting it to be. The term income remains ambiguous because it does not define what income the term is to be applied to, the community, or his interest in the community.

While the trial court did not make a specific finding that the term "income" was ambiguous, a reading of its memorandum decision implies that such was its finding. The trial court, quoting from defendant's memorandum in *Lester I,* stated:

"No authority need be cited for the proposition that it is in the power of the court to resolve any ambiguity in the terms of any instrument and that the court is empowered to determine the 'intent' of the parties from the law and all the facts and circumstances surrounding the situation out of which the issue arose.

Our court has said:

"From the above authorities, the rule deducible as to what definition is to be given the word 'proceeds' is that the intention of the parties governs and is to be gathered from all of the surrounding facts and circumstances . . . ." *Furst & Thomas v. Elliott,* 56 Idaho 491, 502–503 [56 P.2d 1064].

### Conclusions

We suggest that the manifest 'intent' of the parties was to provide for the children's support (Decree, paragraph V—Support Payments) and care (Decree, paragraph II—Setting Over Family Home to Plaintiff, paragraph VII—Medical-Dental Care, paragraph VII [sic]—Will in Favor of Children) in a manner commensurate with their needs and life style and consistent with their father's ability to pay, and that the funds to meet the financial obligations assumed by the defendant would come from the defendant's farming operations (Decree, paragraph III—Setting over Farm Lands, Cattle, Farm Machinery, etc., to the defendant)."

Having concluded that the term remained ambiguous, the trial court was free to look to the parties' intent to construe the agreement.

The district court in its memorandum decision in this case states that the affidavits presented by the defendant in *Lester I* referred to the entire community income. The income tax returns upon which the judge relied reflected the entire community income. The trial court found that when the parties entered into the stipulation in 1972, neither party contemplated the possibility of splitting the farm and ranch income. Mr. Lester's major source of income then was the farming and ranch operations. The formula for computing the child support obligation was based upon the knowledge of both parties as to the past community income derived from this farming operation. There was no contemplation on their part that defendant could or would seek to avoid the stipulated payment schedule by the device of splitting the community income derived from the farming operation. The district judge presided over both the *Lester I* and the *Lester II* cases.

We have reviewed the record, findings of fact and conclusions of law and find that they are supported by substantial and competent evidence. Therefore, the order will not be reversed on appeal. *Foremost Ins. Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981); *Cougar Bay Co. Inc., v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979).

Judgment affirmed. Costs to respondent.

DONALDSON, C.J., and SCOGGIN, J. Pro Tem., concur.

BAKES, Justice, dissenting:

As the majority opinion correctly points out, the original property settlement, which was incorporated into the original divorce decree between these parties, was ambiguous when it required appellant to pay child support based upon his "income," without further defining what "income" meant. Because of that ambiguity, a dispute arose over whether or not the child support should be computed upon the gross or the net income, Mrs. Lester arguing that it should be computed on Mr. Lester's gross income before deducting his operating and business expenses.

Mrs. Lester had Mr. Lester cited for contempt for failure to make the proper amount of child support. In that contempt proceeding the trial court found that the term "income" as used in the original property settlement agreement and divorce decree was ambiguous and, as a result, entered a decree in which the court found that the parties intended that "income" as used in the original property settlement agreement and divorce decree meant "taxable income" as defined in the Internal Revenue Code. On appeal this Court, in *Lester v. Lester,* 99 Idaho 250, 580 P.2d 853 (1978) (*Lester I*), affirmed the trial court, stating the issue to be:

"The second issue presented by appellant [Mrs. Lester] addresses the trial court's finding that the term, 'income,' as used in the divorce decree is ambiguous and that

the parties intended it to mean 'taxable income' as the term is defined by § 63 of the Internal Revenue Code." *Lester v. Lester, supra* at 252, 580 P.2d 853.

That was the issue in *Lester I,* and the Court affirmed the trial court's finding that the term "income" as used in the divorce decree was ambiguous and that the parties had intended it to mean "taxable income" as the term is defined by § 63 of the Internal Revenue Code. To avoid any misunderstanding as to what was meant by "taxable income" as defined in section 63, the Court then set out the statutory definition of "taxable income" in a footnote as follows:

> "2. 26 U.S.C. § 63 defines 'taxable income' as: (a) General rule.—Except as provided in subsection (b), for purposes of this subtitle the term 'taxable income' means gross income, minus the deductions allowed by this chapter, other than the standard deduction allowed by part IV (sec. 141 and following).
>
> "(b) Individuals electing standard deduction.—In the case of an individual electing under section 144 to use the standard deduction provided in part IV (sec. 141 and following), for purposes of this subtitle the term 'taxable income' means adjusted gross income, minus—
>
> (1) such standard deduction, and
>
> (2) the deductions for personal exemptions provided in section 151." 99 Idaho at 252–53, 580 P.2d 853.

The problem with the majority opinion in this case, *Lester II,* stems from a misunderstanding of what the issue is in this case. The majority states, "The issue on appeal is the meaning of the term 'income' as used in the divorce decree." *Ante* at 916. However, that is *not* the issue in this case, *Lester II.* That was the issue in *Lester I,* which was resolved by the trial court and affirmed by this Court on appeal, holding that the word "income" as used in the original divorce decree meant "taxable income as the term is defined by § 63 of the Inter-

nal Revenue Code." Therefore, the issue on this appeal, *Lester II,* is not what the meaning of the term "income" as used in the original divorce decree is, but what was Mr. Lester's "taxable income as the term is defined by § 63 of the Internal Revenue Code," as this Court affirmed in *Lester I,* and whether Mr. Lester properly reported his child support based upon that "taxable income." The majority states, "The term 'income' remained ambiguous even after the court defined it in *Lester I.*" *Ante* at 916. However, the majority does not point out how the *Lester I* Court's definition of "income," *i.e.,* "taxable income as the term is defined by § 63 of the Internal Revenue Code," is ambiguous. And indeed they cannot, because that definition is very precise. Presumably that is why the Court in *Lester I* set out 26 U.S.C. § 63 in footnote 2 in that opinion, in order to more clearly resolve the ambiguity problem which was inherent in the original divorce decree.[1] If you read between the lines, what the majority is really saying in this case is that the judgment in *Lester I* still does not achieve the result which the majority thinks should be obtained in this case, and therefore they are once again redefining the term "income" as that term was used in the original divorce decree. In effect, the majority has turned this case, *Lester II,* into a rehearing of *Lester I.* However, *Lester I* is a final judgment, affirmed by this Court, and no petition for rehearing was granted. Thus, as with any other final judgment, unless it is ambiguous it must be followed as written. As noted by the New Mexico Supreme Court in *Parks v. Parks,* 91 N.M. 369, 574 P.2d 588 (1978):

> "The rules to be followed in arriving at the meaning of ... judgments ... are not dissimilar to those relating to other written documents. Where the decree is clear and unambiguous, neither pleadings, findings, nor matters dehors the rec-

---

1. As an example of the preciseness of the term "taxable income" as used in the Internal Revenue Code, the Idaho Income Tax Act adopts for Idaho income tax purposes the definition of "taxable income" as contained in § 63 of the

Internal Revenue Code: "[I.C. §] 63–3022. TAXABLE INCOME.—The term 'taxable income' means 'taxable income' as defined in section 63 of the Internal Revenue Code ...."

ord may be used to change its meaning or even to construe it. It must stand and be enforced as it speaks." 574 P.2d at 591. The judgment in *Lester I,* which determined that "income" as used in the original divorce decree meant "taxable income as the term is defined by section 63 of the Internal Revenue Code" is precise and unambiguous. That judgment in *Lester I,* being unambiguous and final, cannot be reopened and reinterpreted merely because this Court now thinks that it doesn't get the result which was really intended.

Under 26 U.S.C. § 63, each spouse is to report one-half of community income on a separate income tax return. *See United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1970), where the court noted the following:

" 'Has the wife ... such an interest in the community income that she should separately report and pay tax on one-half of such income?' ...

"Th[e] affirmative answer to a question phrased in terms of 'should,' not 'may,' clearly indicates that the wife had the obligation, not merely the right to report half the community income.

"The federal courts since *Malcolm* [*United States v. Malcolm,* 282 U.S. 792 [51 S.Ct. 184, 75 L.Ed. 714] (1931)] consistently have held that the wife is required to report half the community income and that the husband is taxable only on the other half." 403 U.S. at 196, 91 S.Ct. at 1767.

*See also* 33 Am.Jur.2d Federal Taxation §§ 1250–1260; *Stewart v. Comm'r,* 95 F.2d 821 (5th Cir.1938) ("[i]n making separate returns, a husband and wife domiciled in Texas are each required to report one-half of the income which simultaneously with its receipt becomes community property."). If *both* husband and wife consent, the Internal Revenue Code gives them the option to file joint returns. I.R.C. § 6013.[2] However, the law is clear that the income belongs half to one spouse and half to the other. Since the *Lester I* judgment defined the word "income" to mean "taxable income as the word is defined ..." in the Internal Revenue Code, appellant's "income" for the years 1975 and 1978 would be that amount claimed on his separate tax return. The judgment in *Lester I,* which is now final and *res judicata,* is not ambiguous, and the trial court should not have been permitted to refer to circumstances surrounding the rendering of the judgment in *Lester I* or the original divorce decree in making its decision. That was forclosed by the judgment in *Lester I,* which is now final.[3]

The trial court's decision should be reversed.

SHEPARD, J., concurs.

2. The general rule in income tax law is that each taxpayer file a separate tax return. However, when married taxpayers *both* agree to file a joint return, § 6013 allows them to do that by providing an exception to the general rule for married taxpayers. § 6013 reads in pertinent part as follows:

"§ 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE

"(a) Joint returns.—A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions, except as provided below:
. . . "

3. There is another problem in this case which will be caused by the majority's affirming the trial court's ruling that Mr. Lester must compute his child support based upon his "entire community income" which will surely spawn further litigation in this matter. Since one-half of the community income of Mr. Lester and his present spouse legally belongs to his spouse, there is a serious question of whether Mr. Lester can be compelled to pay child support based upon income which legally belongs to someone else. Throughout all of these proceedings it has been assumed that the only community income was the income from Mr. Lester's separate property and his personal services. However, Mr. Lester's present spouse may indeed have her own separate estate which generates community income and, additionally, may have community income from her personal services which, according to the majority's present interpretation of *Lester I,* would technically be included in Mr. Lester's "income" for purposes of computing his child support. This will no doubt result in *Lester III,* in which we will be asked to reinterpret *Lester II* (which reinterpreted *Lester I,* which interpreted the original divorce decree).