In re the Marriage of Darlene A. STICH, n/k/a Darlene Dufeck, Petitioner, Appellant,

v.

Jerome C. STICH, Respondent.

No. C0-88-1523.

Court of Appeals of Minnesota.

Feb. 21, 1989.

Daniel P. DeWan, North Branch, for petitioner-appellant.

Richard C. Salmen, St. Paul, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and RANDALL and BOWEN * JJ.

## OPINION

CRIPPEN, Judge.

Appellant challenges the trial court's determination that support enforcement orders in 1976, 1979 and 1984 eliminated part of the obligation created in the court's 1975 dissolution decree. Appellant also contends the trial court erred in denying arrearages for payments respondent made directly to their youngest child. Both parties contend the trial court erred in denying attorney fees. We reverse and remand for a factual determination of the amount of accumulated arrearages and interest under the original divorce decree, reduced by lawful retroactive downward modification of the award, if any, and for entry of an appropriate judgment.

## FACTS

In June 1975, pursuant to a stipulation of the parties, a dissolution decree awarded

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

appellant Darlene Stich, now known as Darlene Dufeck $450 support for four children (then ages five to eight) with the provision that $300 be payable to the Chisago County Welfare Department and that $150, although a part of the child support award, be payable to respondent Jerome Stich's parents to reduce their $7100 second mortgage on the homestead awarded to appellant. The obligation to make payments to the county arose because appellant received AFDC payments for 52 of the months scattered between July 1975 and October 1982, totaling $18,990. The mortgage note to respondent's parents was paid by appellant in January 1985 when the obligation included a principal balance of $6,042.92 and interest of $5,666.98. Although the principal was reduced from the figure found by the trial court in 1975, there is undisputed evidence that Jerome Stich made none of the payments to his parents which were required by the 1975 decree.

At the conclusion of 1976 contempt proceedings handled by the Chisago County attorney, the court ordered respondent to pay $250 per month child support, all to be delivered to the welfare department. No amendment of the 1975 judgment was ordered and the order does not speak to the original division of the award into welfare and mortgage payments. The motion and order were filed outside the record in the immediate proceedings, in Chisago County file "Reciprocal No. 462."

A 1979 contempt order, similarly obtained by the county attorney, repeats the 1976 action, again without amending the original judgment. Appellant was not personally present during the 1976 and 1979 proceedings and respondent Jerome Stich appeared without counsel.

In December 1979, respondent's attorney filed a motion for amending the 1975 judgment to provide for $250 support payments, including $150 to be delivered to his parents. The record shows neither a hearing nor an order on the motion.

In 1984, both parties appeared with private counsel for further child support proceedings. The court ordered respondent to pay $500 per month for four children effective in September 1984 through February 1985, with a reduction to $400 for three children effective March 1, 1985 through August 1986, and then to $200 for one child effective September 1, 1986 through February 10, 1988. Although in 1984 the trial court considered and reserved dealing with the topic of payments respondent was to make to his parents, appellant's final arrearage calculations now provided to the trial court abandoned the claim that the obligation for payment to respondent's parents continued after September 1, 1984, the effective date of the changes ordered in the 1984 proceeding.

On June 25, 1987, appellant filed a motion for recovery of $23,985 arrearages, including nonpayment of the $150 obligation, $2,000 for support respondent paid directly to the youngest child for the 10 months of September 1986 through June 1987, and $385 in arrearages claimed for the period through the court proceedings in October 1984. In proposed findings to the trial court and in final arguments submitted on August 12, 1987, appellant calculated her claim as one for $22,522.30. This calculation includes four items: 1) $16,500 for $150 per month payments due between July 1975 and August 1984; 2) $2200 for $50 per month payments ($300 awarded, $250 paid) due in the 44 of 96 months between September 1976 through August 1984 when appellant was not receiving public assistance (thus appellant accepts Chisago County's concession of $50 under the 1976 and 1979 orders for the 52 months she received assistance); 3) $2400 for $200 per month payments due between September 1986 and the hearing in August 1987; and 4) $1,422.30 other arrearages which are calculated by comparing the obligation over the years with a record of payments and which appear from appellant's figures to trace to payments due between September 1976 and 1982. These calculations take into account a credit of $2,112.70 on respondent's lien rights on the homestead which was sold in January 1985. In the 1975 decree respondent was awarded a lien of $4320, less one-half of sale costs. Ap-

pellant also seeks recovery of interest on accumulated arrearages.

On August 3, 1987, respondent filed a motion asking that appellant's petition be denied, that respondent be presently forgiven for any arrearages that have accumulated, and that subsequent support payments for the youngest child be made directly to the child.

Respondent argued to the trial court that appellant had lost her entitlement for most of the $150 payments to be made to respondent's parents by reason of the 1976 and 1979 orders setting support at $250. Respondent contended that the orders bound appellant by reason of collateral estoppel and that any present effort to recover the $150 payments requires an unlawful retroactive increase in the support obligation. Respondent's contention rested on the proposition that Chisago County had the authority to act on behalf of appellant, and respondent claimed that this authority arose because appellant assigned her child support rights to Chisago County in 1978 and 1979, if not earlier by operation of law. Respondent further denied arrearages for the period after September 1986 because as of that month he paid all $200 child support payments directly to his daughter with the consent of appellant.

Finally, respondent asked for retroactive forgiveness both as to the $150 payments, and as to any other arrearages. Respondent offered evidence that he paid the $385 item of arrearages mentioned initially in appellant's motion documents.

The trial court adopted respondent's argument that the 1976 and 1979 orders forgave the subsequent obligation of payments to respondent's parents and that appellant is collaterally estopped from challenging those orders. The court also forgave respondent for the $2400 of support paid directly to his daughter. Resolving conflicting statements of the parties in their affidavits, the trial court found that the direct payments to the daughter had been with appellant's consent.

The trial court agreed with respondent that he had made a $385 payment on arrearages in 1985. Although the court's order otherwise did not address appellant's calculation of arrearages, the court forgave all early arrearages.

## ISSUES

1. Did the trial court err by denying arrearages owed under the original divorce decree?

2. Did the trial court err by denying $2400 arrearages for the $200 obligation respondent directly paid to the parties' youngest child?

3. Did the trial court abuse its discretion by denying an award of attorneys fees?

## ANALYSIS

Appellant's claim for arrearages under the original 1975 divorce decree total $20,122.30 ($16,500, plus $2200, plus $1,422.30). In addition, appellant claims $2400 for support due after August 1986 according to the 1984 support order.

1. Arrearages under original decree.

a. Trial court forgiveness—reliance on county support orders.

■ Respondent first contends and the trial court agreed that orders issued for the period between September 1976 and August 1984 effectively modified the dissolution decree to eliminate respondent's obligation to make $150 payments to his parents. This contention is incorrect. The 1975 decree was not modified by the 1976 or 1979 orders nor did the court purport to modify the judgment at either time. The proceedings involved different interests than in the dissolution case. Appropriately, they were handled in an entirely different file. It is evident that in October 1979, when respondent filed a motion for modification of the judgment he was fully aware that the original judgment called for an obligation that was not addressed in subsequent contempt proceedings initiated by the county.

■ We recognize that the trial court has the power to interpret its prior divorce decrees to work a reasonable result. *Palmi v. Palmi*, 273 Minn. 97, 104, 140 N.W.2d

77, 82 (1966); *Stewart v. Stewart,* 400 N.W.2d 157, 159 (Minn.Ct.App.1987); *Keil v. Keil,* 390 N.W.2d 36, 38 (Minn.Ct.App. 1986). A divorce decree that is ambiguous or uncertain on its face and is of doubtful meaning or open to diverse constructions may be clarified by the tribunal that ordered it. *Mikoda v. Mikoda,* 413 N.W.2d 238, 241 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Dec. 22, 1987). There is a dispute here whether the 1976 and 1979 proceedings actually addressed anything other than respondent's obligation to pay $300 per month to the welfare authorities. However, the court's present authority to determine the case by interpretation of prior orders is limited to dealings with prior judgments. It goes beyond interpretation to give credence to an order retroactively as the modification of a judgment.

██ Respondent also contends that appellant is bound by collateral estoppel either because assignment of appellant's support interest empowered the county when acting in 1976 and 1979 to modify the decree, or because those assignments forever destroyed appellant's claims for support not collected by the county.[1]

An assignment of welfare benefits fully empowers the counties to collect past and current support payments. The statutes, however, do not empower the counties to unilaterally release or discharge benefits decreed in a dissolution judgment.[2] Counsel for the county in these proceedings has not pretended to represent the obligee but successfully satisfied the county interests in enforcing and collecting support payments.[3] County proceedings in this regard are not unlike independent proceedings under the Uniform Reciprocal Enforcement of Support Act. Minn.Stat. § 518C (1988). *See State ex rel. County of Hennepin v. Erlandson,* 380 N.W.2d 578 (Minn.Ct.App. 1986).

Respondent contends that he felt he could safely rely on the 1976 and 1979 court orders, and that enforcement of his obligation is inequitable. We appreciate that the handling of county proceedings in 1976 and 1979 may have mislead respondent and we think it very important that county officials and the courts handle county collection proceedings with great care so as to avoid deceiving obligors into believing their obligations have been reduced. We are compelled, nevertheless, to favor the law which includes honoring valid judgments and recognizing that the county lacked authority to unilaterally sacrifice decreed interests of an obligee.

██ Furthermore, equitable defenses are inapplicable when a party moves to forgive or enforce support arrearages. *Miller v. Miller,* 370 N.W.2d 481, 483 (Minn.Ct.App.1985); *Vitalis v. Vitalis,* 363

1. Respondent relies in part on a statement in *State ex rel. Southwell v. Chamberland,* 361 N.W.2d 814 (Minn.1985) for his argument that an assignment under the federal AFDC laws to the county is a total and complete assignment giving it the authority to make a binding agreement to reduce the amount of child support. The supreme court stated, "[t]he assignment extinguished any right Southwell had to recover assigned child support arrearages on her own behalf." *Id.* at 818. This statement and the holding in *Southwell* determines the interests of the obligee as against the interests of the county. It does not address the obligee's rights vis-a-vis the obligor and as to claims in excess of the county's recovery.

2. Prior to 1977 the county's only right was to obtain reimbursement for unpaid support. *See* Minn.Stat. § 256.87 (1976) (The county has a cause of action "for such amount of assistance furnished under sections 256.72 to 256.87."). In 1977, counties were given the initial authority to seek a continuing order for support, creating the confusion of a separate support proceeding which creates the issues in this case. 1977 Minn. Laws ch. 282, § 1. The 1978 amendment to section 518.64, subdivision 1 empowered the counties to seek a support modification. 1978 Minn. Laws ch. 772, § 59. It is evident in this respect that this extended a benefit to the counties, permitting their requests for increased amounts of support. The amendment did not state the authority of the county to act independent of a recipient to destroy benefits decreed in the recipient's favor. *See id.*

3. We again note the county in this case expended $18,990 at times prior to 1982. It is undisputed that respondent has made support payments since 1975 totaling at least $34,865. The county surrendered its security for support payments in 1986, and has not intervened in the present proceedings. There is no suggestion of record that the county was not fully reimbursed for the amount of assistance it furnished.

N.W.2d 57, 59–60 (Minn.Ct.App.1985); *Benedict v. Benedict,* 361 N.W.2d 429, 432 (Minn.Ct.App.1985). The interests of the children for support are a paramount concern to the interests of the respondent. We also note that appellant has to a certain extent justifiably relied on the continuing validity of the original decree.

b. Alternative trial court rationale—offset for lien claim.

■ The 1975 decree awarded respondent a lien on appellant's homestead for $4320, less one-half of sale costs. Appellant's calculation of arrearages allows respondent a credit of $2,112.70 for the lien claim, based on her recovery of the value of the home in a 1985 sale.

The trial court concluded that respondent's 1979 assignment of the lien claim to the county welfare department ended his obligation to make payments to his parents. This conclusion was erroneous. Although the 1979 transcript shows reference to an exchange of the lien for value, the reference was solely as to accumulated arrearages. Far more important, the assignment was finally ordered and given only to secure respondent's payments, and the county received no payments on the lien; the county released its interests in the lien for title clearance purposes in 1986. Moreover, as already observed, the county had no authority to unilaterally alter respondent's obligation under the judgment.

■ Although appellant's home was not sold until 1985, respondent also asserted to the trial court, consistent with the 1975 decree, that he was entitled to payment of the lien when appellant remarried in 1976. The 1976 value of respondent's lien, depending on a reasonable estimate of future sale expenses, was not determined by the trial court. The court observed, however, that nonpayment of the lien in 1976 eliminated respondent's obligation to make the $150 payments to his parents. Although respondent is entitled to an offset such as appellant offers, but with reasonable interest accumulated since the lien was due, it was error to give respondent a full offset on his payment obligation without calculating the value of the offset.

c. Rationale for forgiveness.

■ Finally, respondent asked the trial court and asks this court to forgive arrearages retroactively. The statutory provision allowing support modifications, amended in 1987 before respondent's motion was made, limits retroactive modification to periods after a motion for judicial modification has been commenced. Minn.Stat. § 518.64, subd. 2 (Supp.1987). We have held that arrearages accruing prior to the effective date of the amendment, June 13, 1987, can be forgiven according to prior law upon a showing of a change of circumstances that justifies retroactive modification and a showing that the obligor's failure to pay was not willful. *See* 1987 Minn.Laws ch. 403, art. 3, § 99, and art. 5, § 23 (stating the effective date). *LaValle v. LaValle,* 430 N.W.2d 224, 230 (Minn.Ct.App.1988); *Bruner v. Bruner,* 429 N.W.2d 679, 682–83 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. Nov. 30, 1988). The trial court made no findings on these standards, and we remand for appropriate findings and conclusions on this issue. Save as retroactive downward modification is justified on the facts and the law, and subject to a maximum noted later, appellant is entitled to a judgment for $11,709.90 on the $150 per month payments to be made to respondent's parents.

d. Maximum mortgage payment obligation.

We observe an ambiguity in the original divorce decree on whether the $150 per month support payments to their parents were to end upon payment of the full amount of the lien on the homestead. It is evident the obligation was not to exceed the lien claim, and respondent is responsible for only the amount appellant ultimately paid to the parent, the $11,709.90 paid in satisfaction of the lien.[4]

---

4. $2100 of the $16,500 claimed arrearages arose before September 1976, when the first enforcement order was issued. Although this obligation is wholly unaffected by 1976 and 1979 orders, this distinction is unimportant because of the $11,709.90 limit on the total claim.

e. Original $300 part of support obligation, 1976–84.

In addition to the $150 obligation, appellant disputes crediting respondent for an additional $2200 for $50 per month due for 44 months when respondent acted under the 1976 and 1979 orders but appellant was not receiving public assistance. For the same reasons that the $150 payment obligation was not destroyed, the additional $50 obligation was not destroyed for those months appellant has not conceded. Unless the record permits findings and conclusions on remand for retroactive modification, appellant is also entitled to judgment on this arrearage. Because of appellant's concession, we do not address the question whether $50 in arrears was accumulated in the months when assistance was paid.

f. Other arrearages.

The trial court findings do not address appellant's evidence suggesting arrearages of $1,422.30 otherwise appearing by comparing payments and the decreed obligation. It is unclear from the record whether any part of this sum represents $150 lien payment arrearages otherwise already calculated.

The trial court erroneously concluded that any problem arrearages were forgiven by the lien assignment in 1979. On remand, the court must make findings to determine the full extent of arrearages. Except as appropriately forgiven by retroactive downward modification, appellant is also entitled to these arrearages.

2. Informal modification.

■ Appellant also seeks arrearages under the 1984 support order for amounts respondent paid directly to their youngest daughter. Respondent paid the proper amount of child support to appellant under the October 1984 modification order until September 1986 when the youngest daughter, who was the only remaining child in appellant's home, moved out to live on her own. Respondent then paid the $200 per month support directly to the daughter. The trial court found this was by the appellant's consent. Appellant disputes this finding and claims the payments are due according to Tell v. Tell, 383 N.W.2d 678 (Minn.1986), arguing that until a modification was ordered, respondent had to make the payments as required by the 1984 order.

Although the parties dispute whether appellant consented to making the payments directly to the daughter, the trial court found that she had. This finding is not clearly erroneous on the record here, and it cannot be upset on appeal. Respondent has met his support obligation under the 1984 order.

■ 3. Attorney fees. The trial court denied both parties' requests for attorney fees. Under section 518.14, the trial court "after considering the financial resources of both parties, may require one party to pay a reasonable amount necessary to enable the other spouse to carry on or to contest the proceeding, and to pay attorney's fees." Minn.Stat. § 518.14 (1988). The allowance of attorney fees rests almost entirely in the discretion of the trial court. Solon v. Solon, 255 N.W.2d 395, 397 (Minn. 1977). "The denial of fees may be an abuse of discretion when there is a wide disparity in the financial resources of the parties." Worden v. Worden, 403 N.W.2d 909, 912 (Minn.Ct.App.1987) (citing Nash v. Nash, 388 N.W.2d 777, 782 (Minn.Ct.App. 1986), pet. for rev. denied, (Minn. Aug. 20, 1986)). Nothing in the record suggests there is a wide financial disparity or that the parties cannot pay their own attorney fees.

## DECISION

The legal basis for the trial court's decision precluding recovery of arrearages is invalid. We remand for trial court findings on the factual accuracy of appellant's claim of $1,422.30 arrearages, and for findings on whether respondent is entitled to retroactive downward modification of this or other unpaid support (maximum of $11,-709.90 on $150 payments through August 1984, and $2200 for $50 sums due for the months through August 1984). The trial court must also calculate interest on arrearages. At the same time, the trial court should determine respondent's claim to a

credit or offset equal to interest accumulated on a lien payment not made when due in 1976.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.