**Gloria HAHNE, Plaintiff and Appellee,**

v.

**Anthony HAHNE, Defendant
and Appellant.**

**Nos. 16043, 16052.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 14, 1988.

Decided July 12, 1989.

Rick A. Cain of Seiler & Cain, Mobridge, for plaintiff and appellee.

Clark J. Bormann of Bormann, Buckmeier & Bormann, Mobridge (Laurie M. Bauer of Bormann, Buckmeier & Bormann, Mobridge), for defendant and appellant.

HENDERSON, Justice.

PROCEDURAL HISTORY/ISSUES

Appellant Anthony Hahne (Anthony) is the ex-husband of Appellee Gloria Hahne (Gloria). He appeals from a judgment of the circuit court for Campbell County, after a show cause hearing, holding him in con-

tempt for (1) failing to make child support payments, and (2) failing to transfer ownership of a life insurance policy to Gloria as directed by the parties' 1973 Minnesota decree of divorce and subsequent proceedings in that state. The circuit court ordered Anthony to pay $4,316.48 in child support arrearages and interest thereon, and to pay an amount equal to net cash value of the insurance policy, as of June 19, 1983. Anthony, via notice of appeal (Appeal No. 16043), asserts circuit court error in two respects:

(1) There were no child support arrearages to pay, per a Minnesota court order dated August 28, 1984; and

(2) Statutes of limitations barred Gloria's claim regarding the life insurance policy.

Gloria, in turn, filed a notice of review (Appeal No. 16052) alleging that the circuit court erred in refusing to take jurisdiction of her claim for an award of alimony where the Minnesota court had, in 1984, awarded her none, but reserved jurisdiction over the question. We affirm the trial court on the alimony issue raised by Gloria, but reverse the trial court's determinations regarding child support and the insurance policy.

## FACTS

Hahnes were married in South Dakota on October 9, 1959. In 1968, they moved to Hibbing, Minnesota. They were divorced in Minnesota pursuant to a Decree of Divorce dated January 29, 1973, issued by the District Court for Itasca County, Minnesota. Three children were born of the marriage, of which only the youngest, Brenda, is relevant to the present case. In addition to providing child support, the 1973 decree contained the following paragraph regarding a life insurance policy:

6. That the Defendant shall continue in force and effect the life insurance policy which he has, in the name of Perpetual Life Insurance Company, and shall designate as beneficiaries on said policy the three minor children of said marriage, and the defendant shall continue paying the premium on said policy and SAID POLICY SHALL BE ENDORSED SHOWING OWNERSHIP THEREIN IN THE PLAINTIFF, but the premiums due and payable thereon shall be paid by the defendant. (Emphasis added).

The divorce decree, provided, inter alia, "[t]hat the Plaintiff [Gloria] shall not be entitled to any alimony but the Court shall reserve jurisdiction of the question of alimony should the Plaintiff become unable to work because of physical impairment." This provision was the fruit of a stipulation between the Hahnes, as noted in a subsequent order of the Minnesota Court, dated January 15, 1974. This 1974 order directed Anthony to pay $1,600 alimony, in monthly payments of $100, after Gloria lost four months employment through temporary physical disability in 1973, due to an injury Gloria suffered during the marriage. That 1974 court order continued:

The granting of this lump sum alimony for the year 1973 should not be considered by the parties as an indication that the Court approves of continued applications for alimony by the plaintiff (Gloria) as it is this Court's feeling that both parties should readjust their lives so as to become self-supporting without reliance upon each other in the future.

Thereafter, Gloria maintained employment as manager of a lounge or liquor store until September 1984. Her health deteriorated, as evidenced by five hospitalizations in 1981. By September 24, 1984, she became, according to a Social Security Administration ruling, totally disabled, entitling her to disability insurance benefits (now $304 per month). Gloria, by her testimony, has no income other than the disability payments. She owns her own home, worth $45,000, which she paid for with funds she received from an inheritance.

In 1983, Gloria returned to the Minnesota court seeking alimony and child support arrearages. The resulting court order, dated January 11, 1983, noted that Anthony owed no obligations for the older children (Anthony had custody of a son, Paul, while Debra had become emancipated), but established Anthony's child support payments for Brenda at $200 per month, starting in February 1983.

Anthony testified in the current proceedings that he stopped paying child support for Brenda in August 1983, although she was at that time nineteen and support was to be paid until she attained the age of twenty-one or became independent. The Minnesota court held a hearing on August 10, 1984, at which Gloria was represented by counsel, but Anthony appeared pro se. The Minnesota Court's findings and order, dated August 28, 1984, contains the following provision regarding child support:

> 5. The Court further finds that the daughter of the parties, Brenda, now age 20, resides with the Petitioner, that she is self-sufficient and under the terms and conditions of the original decree is no longer the obligation of the Respondent to support.

The court denied Gloria alimony at that time, but retained jurisdiction over the issue. The judge who signed the order of August 28, 1984, subsequently wrote, in a letter to Gloria's counsel, dated October 1, 1984, that:

> I have reviewed the file and find that I am unable to amend the same as it relates to child support or attorney's fees, absent a specific motion to do so.
>
> It was my intention that support be awarded as per the Order, and I was of the opinion that Mrs. Hahne, currently being the moving party, should have provided for her own attorney's fees.

The above is the entire text of the judge's letter. On October 16, 1987, Anthony's counsel sent a letter to the Minnesota judge requesting that he indicate whether his 1984 order meant that no child support was due in 1983 or 1984. The judge responded in a letter dated October 22, 1987: "I have again reviewed my file. I find that I did not make any order requiring Mr. Hahne to pay support. The issue of support was litigated and the Court made no order. To me that obviously means that none was due and owing." Gloria now maintains that the matter of child support arrearages was not before the Minnesota court in 1984 although Anthony admitted in the current South Dakota proceeding that he had not been paying child support since August 1983. Anthony, on the other hand, testified that the Minnesota court had "told me I didn't have to pay child support arrearages" but produced no court documents substantiating his claim.

In 1987, notwithstanding the Minnesota decree and hearings in Minnesota thereon, before the circuit court for Campbell County, South Dakota, Gloria sought, and was granted, an order for Anthony to show cause why he should not be held in contempt for not paying his past due child support for Brenda. He was also ordered to show cause as to his failure to transfer ownership of his life insurance policy to Gloria, as mandated by the original 1973 divorce decree. Gloria also requested alimony. By then, Gloria was residing in Iowa, and Anthony resided in South Dakota. The circuit court, after a hearing held on June 11, 1987, during which Gloria's counsel asked the court for an alimony award of $1,000 a month, issued findings of fact and conclusions of law to the effect that 1) Anthony had failed to pay thirteen months of child support, from August 1983 through August 1984, at which point the Minnesota Court had terminated his future obligations, 2) Gloria was entitled to the net cash value, plus interest, of the life insurance policy, as of June 19, 1983, the date the youngest child, Brenda, became eighteen years old, and 3) the South Dakota court did not have jurisdiction to consider the question of alimony. These appeals followed.

## DECISION

### A. ANTHONY'S NOTICE OF APPEAL (No. 16043)

#### I. CHILD SUPPORT

*Child Support Is Barred by*
*Res Judicata*

Anthony first argues that Gloria's claim for child support arrearages incurred in 1983 and 1984 is barred by the doctrine of res judicata. We agree.

 "The doctrine of res judicata serves as claim preclusion to prevent relitigation of an issue actually litigated or which could have been properly raised and determined

in a prior action." *Black Hills Jewelry Mfg. Co. v. Felco Jewel Industries,* 336 N.W.2d 153, 157 (S.D.1983). See, also, *Schmidt v. Zellmer,* 298 N.W.2d 178, 180 (S.D.1980). For the purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce. *Nelson v. Hawkeye Security Ins. Co.,* 369 N.W.2d 379, 381 (S.D.1985); *Black Hills Jewelry,* 336 N.W.2d, at 157. In applying these rules to Gloria's claim for child support, we must determine whether the wrong sought to be redressed is the same in both actions. *Black Hills Jewelry,* 336 N.W.2d, at 157.

■ The facts upon which Gloria relies to establish her claim for child support arrearages are the existence of the 1983 Minnesota court order directing Anthony to pay $200 child support per month for Brenda, and Anthony's nonpayment of such support since August, 1983. In 1984, as revealed by the Minnesota court order dated August 28, 1984, according to both of these parties, Anthony had not been paying child support for a full year. The operative facts at the time of the 1984 Minnesota proceeding, by the testimony given at the 1987 show cause hearing in South Dakota, were Anthony's obligation to pay child support for Brenda, and Brenda's emancipation, which Anthony used as justification for his nonpayment of such ordered support. These facts resulted in the Minnesota court's order which ended Anthony's responsibility for child support. They are likewise, the foundation of Gloria's current request for arrearages. Clearly, the wrong addressed in 1984 was Anthony's stoppage of support, the same wrong for which Gloria seeks redress now, as the facts are the same in both the 1984 Minnesota and 1987 South Dakota proceedings. Under *Black Hills Jewelry, supra* Gloria's claim for child support is barred:

> Res judicata is premised upon two maxims: A person should not be twice vexed for the same cause and public policy is best served when litigation has a repose. (citation omitted) These maxims are served when the parties have had a fair

opportunity to place their claims in prior litigation. (citation omitted).
*Black Hills Jewelry,* 336 N.W.2d, at 157.

We reject Gloria's argument that res judicata does not apply for the simple reason that Anthony's nonpayment of child support was an existing fact which was either known or should have been known and litigated in the 1984 Minnesota action. *See, e.g., Nelson,* 369 N.W.2d, at 381. She has had her day in court. This Court wrote, in *Keith v. Willers Truck Service,* 64 S.D. 274, 266 N.W. 256 (1936):

> There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * 'Where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined'.

*Keith,* 64 S.D., at 275–6, 266 N.W., at 257 (quoting, in part, *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195, 198 (1876)). Here, Gloria's 1987 child support claim in South Dakota was occasioned by the same facts as her 1984 Minnesota claim, and, essentially, constituted the same cause of action.

■ We note, in this regard, that Minnesota Courts have authority to forgive past child support arrearages, as the Minnesota court did in 1984. *See, e.g., Stich v. Stich,* 435 N.W.2d 848 (Minn.App.1989); *LaValle v. LaValle,* 430 N.W.2d 224 (Minn.App. 1988); *Young v. Young,* 356 N.W.2d 823

(Minn.App.1984). The Minnesota court thus had jurisdiction to rule as it did, a requirement for application of the doctrine of res judicata. *See, Black Hills Jewelry*, 336 N.W.2d, at 157.

■ In reaching our decision, which is consistent with the import of the two letters penned by the Minnesota court, we do not rely on those letters. These letters, as statements, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted, are hearsay as defined by SDCL 19–16–1. We do, however, take note of Gloria's testimony, at the 1987 show cause hearing, to the effect that she came to the South Dakota courts because the Minnesota judge was unfair. This indicates forum-shopping on her part. Also, the record below, specifically reflected by Gloria's affidavit in support of her motion to show cause, contains an allegation that she was entitled to child support for Brenda from January to July of 1985, after the Minnesota court determined Brenda to be emancipated. This reinforces our conviction that Gloria was attempting to relitigate issues decided in 1984. The trial court's decision regarding child support is, therefore, reversed.

## II. STATUTE OF LIMITATIONS

### Statute of Limitation Bars Claim on Insurance Policy

■ Anthony also maintains that Gloria's claim for the cash value of the insurance policy, valued at $4,000, is barred by a statute of limitations. We agree and reverse the trial court on this issue.

The Minnesota court's divorce decree, which directed Anthony to place the insurance policy under Gloria's ownership, was dated January 29, 1973, fourteen years before Gloria sought to enforce this order in the current proceedings. Anthony argues that Gloria's claim is barred under either SDCL 15–2–8,[1] the ten-year statute of limitations which applies to actions upon judgments of sister states or SDCL 15–2–13(4). The latter statute provides for a six-year limitation on "[a]n action for taking, detaining, or injuring any goods or chattels, including actions for specific recovery of personal property." Of these two statutes, it is clear that SDCL 15–2–8, governing foreign judgments, applies. See, e.g., *Matson v. Matson*, 333 N.W.2d 862, 866–8 (Minn. 1983) (10–year limitation on actions or foreign judgments applies to action to collect foreign child support arrearages). A specific statute, i.e., SDCL 15–2–8, does control over the general statute. *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982).

To avoid the application of statutes of limitation in this case, Gloria argues that she was not entitled to the full benefits conferred by ownership of the insurance policy until June 18, 1983, the time when the parties' youngest minor child became 18. We disagree. The 1973 divorce decree directed Anthony to endorse the policy "showing ownership therein in the Plaintiff [Gloria]." Her right to enforce the order to ownership provision vested at that time, January 29, 1973. Gloria asserts that all elements of her cause of action did not manifest themselves until 1983, relying on *Grimm v. Ford Motor Company*, 157 Mich.App. 633, 403 N.W.2d 482 (1986). We find *Grimm* wholly distinguishable, as it concerned wrongful death, for which the cause of action was held to accrue when death occurred. Gloria was entitled to ownership from the outset, i.e., 1973. Further, Gloria testified that she had unsuccessfully attempted to ascertain the actual ownership in the past. She, by her own words, had some realization that she should check the ownership of the policy, yet she failed to do so. There is no evidence of

---

**1.** SDCL 15–2–8 provides, in pertinent part:
 Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within ten years after the cause of action shall have accrued:

(1) An action upon a judgment or decree of any court of the United States, or any state or territory other than this state within the United States; ....

fraud on Anthony's part.[2] Likewise, there is no evidence of any affirmative act by fraudulent concealment on Anthony's part which would toll the statute. See, e.g., *Delany v. Delany*, 402 N.W.2d 701, 704 (S.D.1987).

In the absence of some trust or confidential relationship between the parties there must be some affirmative act or conduct on the part of the defendant designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence, in the absence of a duty to speak, is not ordinarily sufficient.

*Glad v. Gunderson, Farrar, Aldrich and DeMersseman*, 378 N.W.2d 680, 682 (S.D. 1985) (quoting *Hinkle v. Hargens*, 76 S.D. 520, 525, 81 N.W.2d 888, 891 (1957)).

Here, the cause of action accrued immediately, there was no fraud or fraudulent concealment, and no trust or confidential relationship. Gloria's action was time-barred. Accordingly, the trial court is reversed on this issue. In view of this holding, we do not reach Anthony's argument that Gloria failed to prove service of the 1973 divorce decree to him.

## B. GLORIA'S NOTICE OF REVIEW, No. 16052

### *Minnesota Has Alimony Jurisdiction— Not South Dakota*

By notice of review, Gloria seeks reversal of the trial court's refusal to take jurisdiction to consider her request for alimony. She asks for alimony under a 1973 Minnesota divorce decree and subsequent order reserving jurisdiction over the matter entered in 1984.

We begin by noting that the Minnesota decree and order which she now seeks to enforce in South Dakota do not order Anthony to pay alimony. There is simply no alimony order to enforce. Restatement, Conflict of Laws, § 109, provides that a judgment rendered in one state need not be recognized or enforced in another state insofar as that judgment remains modifiable in the state of rendition. Patently, the

decree and order do not direct Anthony to pay alimony. Any responsibility for alimony under the Minnesota judgments is conditional on Gloria's becoming physically incapacitated. A court, either of law or equity, has no authority to enforce *conditional* foreign child support orders when the occurrence or nonoccurrence of that condition has not been adjudicated in the original court. *Whitfield v. Saulsberry*, 247 Ala. 690, 26 So.2d 93, 94 (1946). As the Minnesota court expressly retained the power to modify as to any possible alimony award, we deem it is Minnesota's jurisdictional forum, not ours.

We further note, as we did regarding Issue I, Gloria's statement under cross-examination that she did not return to the Minnesota court because she thought that the Minnesota judge was very unfair; further, she maintains she was never really given the relief for which she prayed. We observe that this is naked forum-shopping. The intent of the Minnesota court can, perhaps, be gleaned from its language in the decree of January 17, 1974, whereby Gloria was awarded lump sum alimony for her last employment during 1974: "It is the Court's feeling that both parties should readjust their lives so as to become self-supporting without reliance upon each other in the future."

We affirm the trial court in its declination of jurisdiction. No final judgment on alimony existed, only a conditional award with the condition unadjudicated. As the Minnesota court reserved jurisdiction over this matter, we leave determination of this issue to that forum.

Although Gloria has petitioned this Court for appellate attorney's fees, we do not, on this record, award such.

Affirmed in part, reversed in part.

MORGAN and MILLER, JJ., concur.

WUEST, C.J., and SABERS, J., dissent.

---

**2.** SDCL 15–2–3 provides that causes of action for relief on the grounds of fraud do not accrue until the aggrieved party discovers, or has actual or constructive notice of the facts constituting fraud.

SABERS, Justice (dissenting).

### 1. *Child support.*

I would affirm the trial court on child support. The January 11, 1983, order states that Anthony was "current through the month of June, 1982," but must pay $116 per month thereafter until February 1983 when the monthly payments will increase to $200. The August 28, 1984, order merely states that Anthony "no longer" is obligated to make the child support payments. Gloria subsequently instituted this action seeking to have the child support order enforced. The trial court reasonably concluded that Anthony had not fulfilled his obligation and found him in contempt of the Minnesota court's orders.

Contrary to the opinion of the majority, Gloria was not attempting to relitigate the issue of child support. Instead she was simply requesting that South Dakota give full faith and credit to the Minnesota orders and enforce them. The trial court enforced the orders in accordance with its interpretation of the orders. "[I]t is the court's responsibility to construe the judgment so as to give effect to the intention of the trial court[.]" *In re Marriage of Cross*, 55 Or.App. 422, 425, 637 P.2d 1386, 1388 (1981); *see also Erbe v. Eady*, 406 So.2d 936 (Ala.Civ.App.1981) (court interpreted uncertainty in a California divorce decree), *writ denied*, 406 So.2d 939 (Ala. 1981), *cert. denied*, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982); *Lester v. Lester*, 104 Idaho 244, 245, 658 P.2d 915, 916 (1983) (Court may "refer to the circumstances surrounding the making of the judgment in attempting to interpret it."). Since the trial court's interpretation of the Minnesota orders is reasonable and supported by the evidence, it should be upheld. *See Halverson v. Halverson*, 381 N.W.2d 69 (Minn.Ct.App.1986).

### 2. *Endorsement of life insurance policy.*

I would also affirm the trial court on this issue because the statute of limitations does not run on a judgment which requires continuing payments and transfer of ownership. The situation may be otherwise if the life insurance policy were paid up. The statute of limitations would start to run from the expiration of the judgment or from a known breach.

### 3. *Alimony.*

The Minnesota trial court reserved judgment on alimony. Although the South Dakota court can accept jurisdiction and modify judgment, it does not have to. *Restatement (Second) of Conflict of Laws* § 109(2) (1971); * *see also People of the State of New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 614, 67 S.Ct. 903, 906, 91 L.Ed. 1133, 1136 (1947) ("So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the [divorce] decree, New York may do."). But here, the trial court (Judge Berndt) concluded he could not accept jurisdiction and modify the judgment on the basis that he thought he had no jurisdiction. He was incorrect in this and it should be remanded to him to correct and for him to determine if he will modify, since he can.

An additional reason to remand for this purpose is the fact that we have an Iowa plaintiff attempting to obtain relief from a South Dakota defendant and it would be extremely inequitable to require her to return to the original state, Minnesota, for the purpose of obtaining a judgment, and then to require her to return to South Dakota to enforce that judgment against the South Dakota resident.

### 4. *Appellate attorney's fees.*

In consideration of the various factors I would award Gloria appellate attorney's fees of $1,000. *Storm v. Storm*, 400 N.W.2d 457 (S.D.1987).

### 5. *Motion to strike.*

I would grant Gloria's motion to strike Exhibits C and D because they were produced and obtained ex parte *after* Judge Berndt's memorandum opinion was issued.

---

* The trial court and the majority have misread the *Restatement*. Section 109 is a permissive grant of power to the second court. Although the second court is not obligated to enforce a modifiable judgment, it is free to do so. Moreover, as comment c explains, the second court is as free to modify the judgment as is the original court.

Accordingly, I would dissent from the majority opinion.

I am authorized to state that WUEST, C.J., joins in this dissent.