**Charles M. HUTH, Plaintiff
and Appellant,**

v.

**Lea Ann HOFFMAN, f/k/a Lea Ann
Huth, Defendant and Appellee.**

**No. 16947.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 20, 1990.

Decided Jan. 2, 1991.

Rodney C. Lefholz, Rapid City, for plaintiff and appellant.

Benjamin J. Eicher of Wallahan & Eicher, Rapid City, for defendant and appellee.

MORGAN, Justice.

Charles M. Huth appeals an Order and Judgment for Child Support Arrearage. We reverse.

Charles M. Huth (Charles) and Lea Ann Hoffman (Lea Ann) were divorced in 1980. The issue of support of the parties' only child was not brought before the court at the time the judgment of divorce was entered, and the court made no decision on child support at that time. Shortly after the divorce, Charles was convicted of manslaughter in the first degree. On March 5, 1981, he was sentenced to the South Dakota State Penitentiary for a period of one hundred years, with seventy-five years suspended. In the meantime, the divorce court conducted a hearing on the issues of child custody and support, issuing its Child Custody and Support Order on April 13, 1981. This order contained the following language:

### III.

That [Charles] has no funds with which to pay child support, is unable to obtain any funds, and therefore, no child support will be established at this time.

### IV.

That if and when [Charles] regains his freedom, the Court shall consider such to be a substantial change of circumstances so as to again bring the issue of child custody, child support and visitation before this Court for review and proper determination.

Charles was paroled in February of 1988. While incarcerated, Charles did not pay any child support or financially contribute to the needs of the parties' son.

In September, 1988, Lea Ann obtained an order to show cause, seeking an order setting child support and for child support arrearages from March 1981 through January 1988. On February 17, 1989, the court issued a memorandum decision awarding arrearages from July 1, 1982, through Sep-

tember, 1988. Findings of Fact and Conclusions of Law, and an Order and Judgment for Child Support Arrearage were filed on October 25, 1989. Charles appeals.

On appeal Charles raises one issue: Do res judicata and collateral estoppel preclude an action for child support arrearages when the original support order stated that "no child support will be established"?

■ Charles' appellate brief argues that the trial court's action was barred by res judicata and collateral estoppel. It is settled law that affirmative defenses such as res judicata and collateral estoppel must be affirmatively pleaded, or they are waived. *Kier v. Kier,* 454 N.W.2d 544, 546 (S.D. 1990); *Oesterling v. Oesterling,* 354 N.W.2d 735, 736 (S.D.1984); SDCL 15–6–8(c). Charles failed to affirmatively plead the defenses of res judicata and collateral estoppel and did not raise them below. Thus, he waived these defenses and they may not be considered on appeal.

■ Charles also failed to propose findings of fact and conclusions of law, and failed to object to Lea Ann's proposed findings. *See* SDCL 15–6–52(a). The failure of an appellant to object to findings of fact and conclusions of law and to propose his or her own findings, limits review to the question of whether the findings support the conclusions of law and judgment. *GMS, Inc. v. Deadwood Social Club,* 333 N.W.2d 442, 443 (S.D.1983); *In re Application of Veith,* 261 N.W.2d 424, 425 (S.D. 1978). Consequently, the consideration of Charles' appeal is confined to whether the trial court's conclusions of law and its order and judgment for child support arrears are supported by the findings of fact.

In its findings entered on October 25, 1989, the trial court found that in its Child Custody and Support Order dated April 13, 1981, it was "ordered that Plaintiff Charles Huth did not have to make child support payments because of his incarceration." In addition, the trial court made the following finding:

### VIII.

On July 1, 1982 a provision in SDCL § 25–7–7 became effective requiring that "The child support obligation of a parent who fails to furnish maintenance, education and support of his child, and who maintains continued absence from the home, is $50 per month per child." This provision stood as law in South Dakota until July 1, 1985 at which time the same was amended with language not affecting the $50 per month per child figure. The statute was again amended effective July 1, 1986 wherein the minimum child support obligation for an absent parent for one child, where the parent earns from $0 to $600 per month was set at $65 to $78 per month.

It was based on these findings that the trial court concluded that Charles was liable for child support arrearages. The court made the following conclusions:

### V.

The "automatic" child support provision of SDCL § 25–7–7, effective July 1, 1982, substantially affected the right of an individual to receive support for a child without the necessity of the existence of a court order, and substantially affected the obligation of an individual to provide support for a child without the necessity of a court order.

### VI.

Plaintiff Charles Huth's common law and statutory duty of providing child support for Brandon Michael Huth to Defendant Lea Ann Hoffman became affixed at a minimum of $50 per month pursuant to the provisions of SDCL § 25–7–7 as of July 1, 1982, which continued at that figure to July 1, 1986, at which time under the amended provisions of SDCL § 25–7–7 it became $65 per month from July 1, 1986 through the month of September 1988, inclusive.

### VII.

Plaintiff Charles Huth has a child support arrearage owing for Brandon Michael Huth to Defendant Lea Ann Hoffman for the period July 1, 1982 through

September 1988, inclusive, in the amount of $4,155, ...

Given the limited scope of review, this case presents a question of law: Does the automatic child support statute support a judgment for child support arrearages contrary to the court's previous order that no child support be established?

In 1982, SDCL 25-7-7 (automatic child support statute) was amended[1] to read as follows:

> The parents of a child are jointly and severally obligated for the necessary maintenance, education and support of the child in accordance with their respective means. *Until established by a court or administrative agency,* the child support obligation of a parent who fails to furnish maintenance, education and support for his child, and who maintains continued absence from the home, is fifty dollars per month per child up to a maximum of one hundred fifty dollars per month for three or more children, commencing on the first day of the absence. For the purposes of this section "continued absence from the home," means that the parent is physically absent from the home for a period of at least thirty consecutive days, and that the nature of the absence constitutes family dissociation because of a substantial severance of marital and family ties and responsibilities, resulting in the child losing or having a substantial reduction of physical care, communication, guidance and support from the parent.

1982 S.D.Laws ch. 194 (emphasis added). Justice Henderson's concurrence in result to the contrary, subsequent amendments in 1986 and in *1989* are not pertinent to this discussion.

The trial court concluded that the enactment of the specific dollar amount of an absent parent's child support obligation in 1982 created Charles' liability for support from July 1, 1982, the date the statute went into effect. The court reasoned that

the automatic child support statute created a right for a custodial parent "to receive support for a child without the necessity of the existence of a court order, and substantially affected the obligation of an individual to provide support for a child without the necessity of a court order." Indeed, the history of the statute indicates that it is a codification of the common law rule that parents have a duty to support their minor children. *See supra* n. 1; *see also Johansen v. Johansen,* 305 N.W.2d 383 (S.D. 1981).

While the purpose of the automatic child support statute was to enforce the common law duty of support, by the plain wording of the statute, "[u]ntil established by a court or administrative agency," the statute is effective only when there has been no judicial or administrative determination of a parent's child support obligation. The purpose of the statute is to provide support without the necessity of, or before commencement of, legal or administrative action.

Here, the trial court specifically ordered in 1981 "that [Charles] did not have to make child support payments because of his incarceration." The fact that he was ordered to pay no child support does not negate the fact that this was "established by a court."

The existence of this child support order forecloses the operation of the automatic child support statute. The statute can impose liability for failure to pay child support only up to the time when a court or agency establishes the support obligation of a parent. Because Charles' child support obligation was established in 1981, the statute could not operate to rescind the previous order and impose liability for support. Thus, the conclusion of the trial court that the automatic child support statute made Charles liable for child support arrearages is an error of law and the judgment must be reversed.

---

**1.** Prior to the 1982 Amendment, the text of SDCL 25-7-7 was as follows:

> The parent entitled to the custody of a child must give it support and education suitable to his circumstances. If the support and edu-

cation which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability.
*See* 1939 SDC 14.0310.

Lea Ann has filed a motion for attorney fees and costs on appeal. She is not the prevailing party on appeal and, thus, is not entitled to attorney fees.

The decision of the trial court is reversed.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Although I concur with the result of this opinion, the facts and language of this opinion deserve an elaboration.

First, this Court could rely upon *Hahne v. Hahne*, 444 N.W.2d 360 (S.D.1989), for the reason that the monthly child support, while the father was in the South Dakota State Penitentiary, was not established in the instant proceeding. In essence, an issue, namely child support, was "an existing fact;" in the holding of *Hahne*, it was an "existing fact which was either known or should have been known and litigated." *Hahne* at 363. The majority opinion states: "The existence of this child support order forecloses the operation of the automatic child support statute." I wholeheartedly agree that the child support statute could not retroactively rescind the previous court order on support (which imposed no child support at all) and now impose a liability for support.

Secondly, it is to the mother's credit that for 7½ years she supported this child and never obtained public assistance; it should be noted, also, that for these 7½ years, she did not ask the trial court to establish child support. By her own affidavit dated September 16, 1988, approximately 6½ months after the father was released from the State Penitentiary, she expressed that she did not want to press child support obligations because she hoped that the father would stay out of "my new family's lives."

Third, the father has sought to renew father-son ties with his son, a fact which she also mentions in her affidavit. Apparently, since his release from prison, he has attempted to, and accomplished, paying support for this child.

Fourth, there is language in this opinion which I believe should be addressed concerning the operation of the automatic child support statute. The Honorable Merton B. Tice, Jr., on October 20, 1989, entered his order, which contained imposition of child support pursuant to SDCL § 25–7–7 and which at that time provided that child support could be established by a "court or administrative agency." However, the "Mini–Judges" have been abolished in the State of South Dakota. I coined this noun to apply to hearings officers established by the Department of Social Services who were unlawfully and ostensibly setting themselves up as judges. I decried their usage and power in my concurrence in result in *Bruning v. Jeffries*, 422 N.W.2d 579 (S.D.1988) upon the grounds that no administrative agency could set child support because it was a violation, inter alia, of the doctrine of separation of powers. In 1989, the South Dakota State Legislature repealed SDCL § 25–7–7 and replaced it with SDCL § 25–7–6.1 which firmly fixed the power to establish child support "... by a court." The words "administrative agency" were deleted. So ended the problem on the conflict regarding separation of powers.

Therefore, the present language of this opinion which entails two sentences and one full paragraph on establishing child support by a court or administrative agency is not in keeping with the present law of this state. The Legislature has a recent enactment and the recent enactment is controlling. "When determining legislative intent, we must assume that the legislature in enacting a provision has in mind previously enacted statutes relating to the same subject matter." *In re Estate of Smith*, 401 N.W.2d 736, 740 (S.D.1987). Most specifically, I take exception to this language: "... the statute is effective only when there has been no judicial or administrative determination of a parent's child support obligation. The purpose of this statute is to provide support without the necessity of,

or before commencement of, legal or administrative action." Only the judicial branch in this state can set child support.

It is now 1990, as I write, and in a few days will be 1991. To render a decision, with obiter dicta, tacitly, if not expressly, approving of child support being established by an administrative agency, flies in the face of statutory language to the absolute contrary.